FOURTH DIVISION

October 30, 2003

No. 1-00-1384

THE PEOPLE OF THE STATE OF ILLINOIS )   Appeal from

) the Circuit Court

Plaintiff-Appellee, ) of Cook County.

)

v. ) No. 98 CR 324 (01)

)

MIGUEL FERNANDEZ, )     Honorable

) Joseph G. Kazmierski,

Defendant-Appellant. ) Judge Presiding.

 

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Miguel Fernandez was convicted of cannabis trafficking and possession of cannabis with the intent to deliver, and was sentenced to 12 years in prison.  On appeal, he contends that (1) the trial court erred in denying his motion to suppress evidence because he did not knowingly and voluntarily consent to the search of his luggage; and (2) the trial court erred in denying his motion to dismiss the indictment due to the State’s destruction of evidence.  For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

Defendant’s conviction arose from his November 26, 1997, arrest at Midway Airport where Drug Enforcement Administration (DEA) agents found approximately 20 kilograms of drugs in his suitcases.   Prior to trial, he filed a motion to quash arrest and suppress evidence, claiming that he did not knowingly and voluntarily consent to the search of his luggage.  At the hearing, Agent Antonio Smith testified that he approached defendant outside the airport terminal along with Officer Howard Small.  Speaking in English, they identified themselves as police officers and asked to talk with defendant regarding his travels.  Defendant agreed to speak with them.  Agent Smith requested defendant’s plane ticket and identification.  In response, defendant produced a copy of his plane ticket receipt, a California driver’s license, and an alien registration card with a photograph of himself.  When Smith asked him if anyone gave him any gifts or packages to bring to Chicago, defendant replied, “no.”  When asked how long he was going to be staying in Chicago, and with whom he would be staying, defendant replied that he did not know.  

Agent Smith then asked defendant a series of questions about his luggage.  He asked defendant whether he packed his bags himself and whether he knew the contents of his bags.  Defendant replied “yes” to both questions.  Smith asked defendant if he would give consent to search his bag and told him that he would be looking for large amounts of narcotics or narcotics related currency.   According to Smith, defendant looked down to the ground, looked back up at Smith and replied “yes.” According to Smith, defendant’s hands were visibly shaking and his voice was cracking.  

Agent Smith testified that one of the suitcases presented in court at the hearing had a lock on one of the zippers.  He did not observe the condition of the lock mechanism at the time the luggage was outside the airport terminal, could not recall whether defendant had a key, and stated that Officer Small did not have any difficulty opening the suitcases.

Defendant testified that he was born in Mexico, was a permanent resident alien, living in the United States since 1995, and had no formal education in English.  According to defendant, he told the police he did not understand everything that they were asking him.  He told them that the suitcases were in his possession, but that they were not his suitcases, and stated that the police opened the luggage without his permission.  Defendant further testified that the luggage had a lock on it, that he did not have the key to the lock, and that the officers forced the suitcases open.   Defendant denied being nervous when he spoke to the officers.  Based upon the testimony presented, the trial court denied the motion to suppress evidence.

Prior to trial, defendant filed a motion to dismiss the indictment, due to the police evidence recovery and protection section’s (ERPS) destruction of two of the three suitcases.  He argued that the destroyed evidence was necessary to establish his defense that he did not knowingly possess the drugs.  The trial court denied the motion to dismiss, finding that the suitcases were not the 
corpus
 
delicti
 of the offense and that the State had sufficient evidence with which to prove its case.  

The following relevant evidence was then produced at a bench trial.  Defendant was seen boarding a Southwest Airlines flight in California on November 26, 1997, and aroused the suspicion of Agent Danielle Claude of the DEA.  According to Agent Claude, defendant was carrying three heavy suitcases that smelled like laundry detergent and paid cash for his ticket to Chicago.  Claude then gave Agent Smith this information as well as a description of defendant and the bag tag numbers for defendant's three suitcases.  Smith testified that he followed defendant to the baggage claim area and saw him claim three bags.  He approached defendant with his partner, Officer Small, and questioned defendant.  Agent Smith testified consistently with his testimony at the hearing on the motion to suppress evidence.

Additionally, Smith stated that defendant told him that he packed his suitcases himself and that they only contained his clothing.  When asked if anyone had given him any gifts or packages to bring to Chicago that he did not know the contents of, defendant replied "no," and again stated that the luggage only contained his clothes.  When Smith asked permission to search his luggage, defendant again stated that it contained only clothing.  According to Smith, defendant then gave him verbal consent by stating that it was okay to search his suitcases.  Smith confirmed that the bag tag numbers on the three bags matched the numbers he was given.  One large brick-like bundle of cannabis was recovered from each of the three suitcases.  Defendant was then arrested and given his 
Miranda
 rights, which he said he understood.    

After his arrest, defendant answered a series of background questions.  According to Smith, defendant told him that the drugs did not belong to him.  He told Smith that a friend of a friend contacted him and asked him to transport three suitcases to Chicago.  The friend told him that the suitcases would be left at the San Diego Airport inside of a cab, and that once he arrived in Chicago with the package he would be paid approximately $1,000 and the suitcases would be picked up by an unidentified individual.

The State introduced a suitcase into evidence in court.  Smith testified that it was one of the three suitcases defendant was carrying on the night of the occurrence.  He acknowledged that the suitcase had a lock, but he stated that he was not responsible for opening up the suitcases and that Officer Small did not have any problems getting into the suitcases.  Agent Claude testified that she thought she observed locks on the luggage when she inspected them.  She acknowledged that there was a lock on the luggage presented in court and that it was probably there when she saw the bags at the airport in San Diego.  

The State also introduced photographs that Smith identified as photographs of the three pieces of luggage carried by defendant and taken on November 26, 1997.  He stated that the photographs fairly and accurately depicted the suitcases as he remembered them on the night of the occurrence.  Included was a blown-up photograph of all three suitcases carried by defendant on the night of the occurrence.   Officer Small also testified that the photographs depicted the three bags that belonged to defendant, that the bags had locks on them, but he did not recall undoing the locks.  He later testified that he did not have to open the locks on the luggage.  He did not recall whether the other two suitcases had locks similar to the lock on the suitcase in court. 

Defendant testified at trial that Jose Anaya invited him to take a trip to Chicago.  He met Anaya two weeks before the trip through other friends of his, but could not recall where he met him or who the friends were that introduced him.  He later testified that he was confused, that he remembered meeting Anaya at a work party and that Anaya knew his family.  Anaya lived down the street from defendant.  He stated that Anaya made the reservations one day before the trip.  He understood that he was going to stay with Mr. Anaya, but he did not know where they were staying or for how long.   On November 26, 1997, he and his wife picked defendant up at his house and took him to the airport.  Anaya asked defendant if he could help him with his suitcases because he was sick with kidney problems.  

Defendant carried three suitcases into the airport and checked them in under his own name.  He agreed that the suitcase introduced in court was one of the suitcases that he carried into the airport.  Anaya told him there were clothes in the suitcases.  Defendant stated that he never examined the bags, but he knew that they had locks on the zippers.  He acknowledged that when the officers asked if they could open up the luggage, defendant told them that it contained clothes because that is what Anaya told him.  When asked why at that point he did not tell the officers that the luggage was Mr. Anaya's, he responded "and what do you want me to tell them – to tell them that so they could kill my kids?"  "If I would say something, they would kill my family."  He testified that Anaya threatened to kill him if he told the police that Mr. Anaya and his wife were carrying clothes in their luggage.   

When asked whether he gave consent to open his luggage, he stated, "I went like this, and they opened them."  No indication is made in the record as to a description of his gesture.  Defendant later testified that he allowed the police to look into his suitcases because he had "nothing to fear."  At the close of the evidence, defendant renewed his motion to dismiss the indictment on account of the destroyed evidence.  The trial judge denied the motion and found defendant guilty as charged.

ANALYSIS  

On appeal, defendant contends that he did not give a knowing and voluntary consent to search his suitcases because he did not understand that he was being asked for permission to do so, nor did he understand that he had a right to refuse the search.  Accordingly, he argues that the police violated his fourth amendment rights.  Initially, we reject defendant's assertion that the State must prove that defendant knew he had a right to refuse consent in order to prove that the consent was valid.  The requirement of a "knowing and intelligent" waiver in this context was repudiated long ago by the United States Supreme Court in 
Schneckloth v. Bustamonte
, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).  The court held that this strict test did not apply to Fourth Amendment rights designed to protect the security of one's privacy against arbitrary intrusion by the police 
because “[a]ny defendant who was the subject of a search authorized solely by his consent could effectively frustrate the introduction into evidence of the fruits of that search by simply failing to testify that he in fact knew he could refuse to consent
.”  
Schneckloth
, 412 U.S. at 230, 36 L. Ed. 2d at 864, 93 S. Ct. at 2049.   

As stated in 
Schneckloth
, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial" such as waiver of the right to a jury trial, waiver of 
Miranda
 rights, or waiver of effective assistance of counsel
.  
Schneckloth
, 412 U.S. at 237, 36 L. Ed. 2d at 868, 93 S. Ct. at 2052-53.  Here, in contrast, the fairness of the trial is not under attack. The fourth amendment is “'not an adjunct to the ascertainment of truth.'”  
Schneckloth
, 412 U.S. at 242, 36 L. Ed. 2d at 872, 93 S. Ct. at 2055.  Accordingly, “the government need not establish such knowledge as the 
sine qua non
 of an effective consent."  
Schneckloth
, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048.    

A consent to search is valid under the fourth amendment if it is voluntary.  
Ohio v. Robinette
, 519 U.S. 33, 40, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417, 421, (1996). Consent is not voluntary where it is the result of official coercion, intimidation or deception.  
People v. Perez
, 288 Ill. App. 3d 1037, 1046, 681 N.E.2d173, 179 (1997).  Voluntariness is a question of fact to be determined from the totality of the circumstances. 
Robinette
, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421.  The determination of the trial court regarding the voluntariness of a consent will not be disturbed unless it is clearly unreasonable. 
People v. Casazza
, 144 Ill. 2d 414, 417-18, 581 N.E.2d 651, 653 (1991).

Here, defendant does not argue that he was coerced, intimidated or deceived, but, rather, that he did not understand English.  According to the officers, defendant answered a litany of questions in English without hesitation and responded with appropriate answers.  For example, when asked to search his luggage, he responded that the luggage only contained clothes.  Additionally, the conversation following his arrest required him to provide more substantial answers, evidencing from the totality of the circumstances that defendant understood what was being asked of him.  Moreover, defendant's own testimony at trial was that he allowed the police to search his suitcases because he "had nothing to fear."  Accordingly, the record supports the trial court's determination that defendant gave voluntary consent to search his luggage.

Next, defendant contends that his right to due process was violated because the police destroyed two of the three suitcases prior to trial.  Defendant argues that the destroyed luggage was material and necessary to his defense because it would have established that the bags were locked, and therefore he did not have access to their contents and hence could not have knowingly possessed the drugs.  

 In 
California v. Trombetta
, 467 U.S. 479, 485-90, 81 L. Ed. 2d 413, 419-23, 104 S. Ct. 2528, 2532-35, (1984), the United States Supreme Court held that the State violates a defendant's right to due process when it destroys evidence that has "constitutional materiality," meaning evidence that (1) has "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  
Trombetta
, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.  However, where the evidence is merely potentially useful, the defendant must establish bad faith on the part of police to establish a due process violation.  
Arizona v. Youngblood
, 488 U.S. 51, 57-58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337 (1988).

Here, we reject defendant's assertion that the two destroyed suitcases were exculpatory evidence with respect to the element of knowing possession.  Defendant's theory at trial was that the suitcases were locked, that he did not have the keys, and that he therefore did not know that there were drugs in the suitcases.  Only one suitcase was necessary to rebut the State's case.  Either the suitcase was locked and it would have served to impeach the State's testimony and proved the defense, or it was not locked and would have corroborated the State's testimony and entirely disproved the defense.  As a result, the other two suitcases were not necessary to his defense.

Additionally, "a defendant should not be rewarded for the inadvertent loss of a piece of evidence where other evidence sufficient to support his conviction remains."  
People v. Hobley
, 159 Ill. 2d 272, 307, 637 N.E.2d 992, 1007 (1994).  Even if defendant were able to prove that he did not have access to the suitcases, the State presented other evidence to show that even despite his lack of access, he knew the contents of the suitcases.   Defendant was paid $1,000 to take the suitcases to Chicago and was told the bags contained only clothes, but he then stated that his family would be killed if he told the police that the suitcases 
filled with clothes 
were Anaya’s, he was nervous and shaking before they opened his luggage, he paid cash for his one-way ticket to Chicago, and he did not know where he would be staying or for how long.  Accordingly, for all of the foregoing reasons, the destroyed luggage can only be described at best as potentially useful.  

Furthermore, defendant had comparable evidence available to him with which to support his theory that he did not have access to the luggage and therefore did not knowingly possess the drugs.  As stated above, the State introduced one of the three suitcases at trial and defendant acknowledged that it was one of the suitcases he was carrying on the night of his arrest.  Defense counsel had ample opportunity to use it as evidence to support his theory that the suitcases were locked, that defendant did not possess the keys, and that defendant therefore was not aware that they contained drugs.  He also had an opportunity to cross-examine the witnesses to determine whether the suitcases were locked and forced open and to impeach their credibility.  

Moreover, enlarged photographs of all three suitcases taken on the night of the arrest were introduced into evidence and were available to the defense to show the condition of the luggage.  While the photographs were not made part of the record on appeal, 
any doubts arising from the incompleteness of the record will be construed against defendant, whose responsibility it was as appellant to present a complete record on review.  
People v. Batrez
, 334 Ill. App. 3d 772, 779, 778 N.E.2d 1182, 1189 (2002); 
Foutch v. O’Bryant
, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984).
  

While defendant argues that all three bags were necessary to resolve contradictions in the testimony which developed at the hearing on the motion to suppress evidence, the State maintains that all three bags were available to him at that time to inspect and use as exhibits to resolve any conflict.  Defendant does not dispute this fact.  Accordingly, where the luggage had only potentially useful value, defendant had other comparable evidence available to his defense, and there was no evidence that the failure to preserve the luggage constituted bad faith by the police, defendant has failed to satisfy the tests set forth in 
Trombetta
 and 
Youngblood
.

Alternatively, defendant argues that he need not show the exculpatory value of the evidence nor make a show of bad faith to establish a due process violation where, as here, he filed a written discovery motion including a request to examine all tangible objects that had been seized from him and the State subsequently destroyed some of the evidence.  He cites 
People v. Newberry
, 166 Ill. 2d 310, 652 N.E.2d 288 (1995), in support.   In 
Newberry
, the court held as follows:

 "where evidence is requested by the defense in a discovery motion, the State is on notice that the evidence must be preserved, and the defense is not required to make an independent showing that the evidence has exculpatory value in order to establish a due process violation. [Citation.]  If the State proceeds to destroy the evidence, appropriate sanctions may be imposed even if the destruction is inadvertent.  No showing of bad faith is necessary."  
Newberry
, 166 Ill. 2d at 317, 652 N.E.2d at 292.

We find that 
Newberry
 is distinguishable from the present case.  In 
Newberry
, not only was the evidence "essential to and determinative of the outcome of the case" (
Newberry
, 166 Ill. 2d at 315, 652 N.E.2d at 291), the defendant  "could not 'obtain comparable evidence by other reasonably available means' [Citation.]"(
Newberry
, 166 Ill. 2d at 316, 652 N.E.2d at 291).  While defendant need not establish the exculpatory value of the evidence, this case is markedly different where, here, defendant was not without alternative means of demonstrating his innocence and thus was not deprived of a meaningful opportunity to present a complete defense.  No due process violation could be proved.  

Independent of any due process violation, defendant makes a related argument on appeal that the State's destruction of the evidence was a discovery violation mandating the dismissal of the indictment as a sanction.  Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i)) confers broad power on the trial court to impose sanctions where the State fails to comply with its discovery obligations.  The appropriate sanction is a decision left to the discretion of the trial court, and its judgment is entitled to great weight.  
Newberry
, 166 Ill. 2d at 318, 652 N.E.2d at 292.  Dismissal of the charges as a discovery sanction is not required in every situation in which evidence is destroyed.  
People v. Sykes
, 341 Ill. App. 3d. 950, 972, 793 N.E.2d 816, 836 (2003); 
People v. Vargas
,116 Ill. App. 3d 787, 792, 452 N.E.2d 736, 739 (1983).  The sanction must be proportionate to the magnitude of the violation.  
People v. Koutsakis
, 255 Ill. App. 3d 306, 314, 627 N.E.2d 388, 393 (1993).    

In 
Newberry
, the defendant raised a Rule 415 discovery violation in the circuit court, and on appeal, “[c]onsidering the pivotal nature of the evidence at issue,” the court found that it was not an abuse of discretion to dismiss the indictment as a proper discovery sanction.  
Newberry
, 166 Ill. 2d at 318, 652 N.E.2d at 292.  In contrast, here, defendant never brought a motion before the trial court pursuant to a Rule 415 discovery violation, and most importantly, the evidence was not pivotal to defendant’s ability to rebut the State’s case.  Dismissing the indictment would have been disproportionate to the magnitude of the violation.  

Furthermore, defendant failed to request any other limitations on the State’s presentation of evidence that could have diminished any potential prejudicial effect (see 
Sykes
, 341 Ill. App. 3d at 972, 793 N.E.2d at 836 (trial court denied motion to dismiss indictment, but granted defendant’s request for an appropriate jury instruction regarding the destruction of evidence), nor do we find that the destruction of the evidence in this case had any prejudicial effect on defendant.  Therefore, it was not an abuse of discretion for the trial court to deny defendant’s motion to dismiss the indictment as a discovery sanction.

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

QUINN, P.J. and HARTMAN, J., concur.