No. 2--05--0018      Filed: 10-30-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--52 |
| ROBERT APPELGREN, | ) ) | Honorable Steven G. Vecchio, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Robert Appelgren, was convicted of one count of harassment by telephone (720 ILCS 135/1--1(2) (West 2004)) and sentenced to a term of six years' imprisonment. On appeal, defendant argues that his conviction should be reversed and the cause remanded for a new trial because the loss of the audiotape forming the basis of his conviction renders the record insufficient for appellate review and thus deprives him of his right to a direct appeal. For the reasons that follow, we agree.

Defendant was charged by indictment with two counts of violating an order of protection (720 ILCS 5/12--30 (West 2004)) and one count of harassment by telephone (720 ILCS 135/1--1(2) (West 2004)). The State subsequently dismissed one of the counts of violating an order of protection, and the matter proceeded to trial on the remaining counts. At defendant's trial, which commenced

October 19, 2004, the State called two witnesses, Rockford police officer Joel Givens and Greg Appelgren.

Officer Givens testified that on the night of May 14, 2004, he responded to a report of a violation of an order of protection and was dispatched to the home of Greg Appelgren, defendant's son. Greg told Givens that he had received several harassing telephone calls from his father. After listening to a portion of an audiotape that Greg had made of the calls, Givens took possession of the recording. During his testimony, Givens noted that he was merely a "courier" for the tape, i.e., he did not record it himself.

Greg testified that he obtained an order of protection against defendant on January 27, 2004, after numerous threatening telephone calls were made to Greg's employer, his wife's employer, and Greg's residence. After the order of protection was issued, Greg did not have any contact with defendant until May 14, 2004, when defendant again began calling his residence. Initially, only Greg's oldest daughter and Greg's granddaughter were there when the calls were received. Greg arrived in time to hear three messages that his digital answering machine recorded. According to Greg, the voice on the messages was that of defendant. Greg transferred the messages to an audiotape and gave the tape to Givens. Although the prosecutor played the tape for the jury, the court reporter did not transcribe the contents of the tape. On cross-examination, Greg admitted that he and defendant have had several disagreements and that he has obtained several orders of protection against defendant. However, Greg explained that there were times between the orders of protection during which he and defendant renewed their relationship and would spend time together. Greg also explained that he transferred the messages to an audio cassette because his answering machine is digital and does not record to tape.

Following Greg's testimony, the State moved the court to allow into evidence the audiotape made by Greg and a certified copy of the January 2004 order of protection. The court allowed the State's motion. The State then rested, and defendant testified on his own behalf.

Defendant recounted that his relationship with Greg has been "terrible" since 1992 and that they argue frequently. Defendant denied calling Greg's residence on or about May 14, 2004. However, he did admit that the voice on the audiotape played in court was his. According to defendant, all of the messages on the tape were left prior to December 24, 2003, and the messages were not all left on the same night. Defendant explained that the last message that he left related to Greg's decision to cancel plans with defendant to have brunch on Christmas Eve 2004. Defendant added that, in one message, he refers to Greg's wedding, which was in 2000, and that that message was left near the time of the wedding. Defendant also explained that another message related to a dream he had in which he contracted incurable cancer, was given only 90 days to live, and stated that he was going to "put a bullet" in Greg's head. Defendant related that he left the message about his dream because he and Greg had been fighting. Defendant added, however, that he has never been diagnosed with cancer and that he has never owned a gun. Defendant reiterated that the intent of the message was merely to recount the details of his dream, i.e., that defendant dreamed that he was going to put a bullet in Greg's head. Defendant stated that he left that message on December 23, 2003, and he denied making any calls to Greg after the January 2004 order of protection was issued. On cross-examination, defendant acknowledged that he refers to "Friday night" in one of the messages and that May 14, 2004, was a Friday night. Defendant related that he often calls Greg on Fridays because that is the only night that Greg is home.

The jury returned a verdict of guilty on the count charging harassment by telephone and not guilty on the count charging a violation of the order of protection. The trial court sentenced defendant to an extended term of six years' imprisonment. Thereafter, defendant filed a notice of appeal.

During the pendency of this appeal, the appellate defender discovered that the audiotape containing the messages recorded by Greg was missing. The appellate defender made several unsuccessful attempts to obtain the tape, including contacting the circuit court clerk, the State's Attorney's office, and the trial judge. The appellate defender also filed a motion to compel production of the exhibit, which this court granted. The circuit court clerk responded to our order to compel with an affidavit averring that he had "no knowledge that such an [e]xhibit ever existed." Because the tape cannot be located, defendant asserts, he has been prevented from obtaining meaningful appellate review. Whether defendant has been denied his right to a direct appeal as a result of an incomplete record is a question of law. We review questions of law de novo. See People v. Brown, 225 Ill. 2d 188, 198 (2007).

Where the defendant is the party appealing, it is his duty to present an adequate record from which to review any claims of error. People v. Schuppert, 217 Ill. App. 3d 715, 717 (1991).[1] The record

---

[1]Defendant, citing to People v. Luke, 253 Ill. App. 3d 136, 139 (1993), asserts that the State has an obligation to furnish "a record of sufficient completeness to permit proper consideration of [a defendant's] claims." Defendant takes this language out of context. Luke holds that if a defendant is indigent, the State bears the "financial burden of obtaining a transcript rather than the administrative burden of preparing the record on appeal." Luke, 253 Ill. App. 3d at 140. Thus, the responsibility of providing the record for the appellate court to review or establishing the need for a missing portion of the record remains with the defendant. See Luke, 253 Ill. App. 3d at 140.

consists of three parts: the common-law record, the report of proceedings, and the trial exhibits. 155 Ill. 2d R. 324; 210 Ill. 2d Rs. 608, 612(d). In this case, we have been provided with the common-law record, the report of proceedings, and the certified copy of the January 2004 order of protection. However, the audiotape containing the messages Greg recorded is missing. Defendant maintains that the audiotape is crucial because he disputed at trial that the tape was an accurate representation of the messages left on Greg's answering machine. Defendant also asserts that the missing tape cannot be reproduced or replaced. Accordingly, defendant argues, without the audiotape, this court cannot adequately assess whether defendant was proven guilty beyond a reasonable doubt. The State responds that defendant has failed to present a case for the necessity of having the tape in the record.

The parties have not cited any Illinois cases addressing the impact of a lost trial exhibit on appellate review. However, defendant refers us to three cases addressing the effect of a missing transcript: People v. Stark, 33 Ill. 2d 616 (1966), People v. Seals, 14 Ill. App. 3d 413 (1973), and People v. Ramos, 295 Ill. App. 3d 522 (1998). In Stark, the supreme court remanded the cause for a new hearing on the defendant's motion to suppress when, through no fault of the defendant, there was no transcript of the suppression hearing available in the record on appeal. Stark, 33 Ill. 2d at 620-22. The court also noted that where the issues discussed during the suppression hearing referenced the defendant's knowing waiver of his right to consult an attorney and whether his confession was made knowingly or had been induced by the police, the transcript of the suppression hearing was "essential to an adequate review." Stark, 33 Ill. 2d at 621. Thus, Stark suggests a two-prong approach to assessing whether a missing transcript deprives a litigant of meaningful appellate review. The reviewing court must assess who is at fault for the absence of a complete record, and the reviewing

court must assess whether its ability to adequately review the issues before it has been affected by the missing portion of the record.

In Seals, the defendant moved for a free transcript of his trial proceedings. Since no court reporter was present at the defendant's trial, the State was ordered to prepare a "bystander's record." The State failed to obey the order, and the trial judge himself prepared a synopsis of the proceedings. The defendant also filed a statement. However, the defendant's statement conflicted with the trial judge's synopsis. Citing to Mayer v. City of Chicago, 404 U.S. 189, 30 L. Ed. 2d 372, 92 S. Ct. 410 (1971), the Seals court held that where the defendant presents a "colorable need" for a complete transcript, the State bears the burden of showing that a portion of the transcript or an alternative to the transcript is sufficient to afford the appellant an effective appeal. Seals, 14 Ill. App. 3d at 414. The court found that the record as it existed revealed a colorable need for a verbatim transcript to afford the defendant effective appellate review of his contentions of error. Seals, 14 Ill. App. 3d at 414. The reviewing court then determined that the State failed to meet the burden of establishing the sufficiency of the report of the proceedings. Seals, 14 Ill. App. 3d at 414. The reviewing court noted that the procedure for preparing a report of proceedings in the absence of a verbatim transcript was not followed and found that the summary prepared by the trial court was insufficient. Seals, 14 Ill. App. 3d at 414. In particular, the reviewing court noted that the trial court's synopsis, while sufficient to show the defendant's guilt, consisted of conclusory language and lacked enough detail to properly review the defendant's allegations of trial error. Seals, 14 Ill. App. 3d at 414. Accordingly, the Seals court reversed the defendant's conviction and remanded the cause for a new trial. Seals, 14 Ill. App. 3d at 414. As the foregoing suggests, the Seals court's approach was similar to the one used in Stark. Notably, the Seals court examined the efforts of the State and the trial court in preparing an adequate

record (and, by implication, considered whether the defendant was at fault for the absence of a complete record) and the importance of the missing evidence to the issues raised by the defendant. However, the court also added a potential third element where the defendant presents a colorable need for a complete transcript, i.e., the presentation of evidence by the State that a portion of the transcript or an alternative to the transcript will be sufficient to afford the appellant an effective appeal. Seals, 14 Ill. App. 3d at 414.

In Ramos, the defendant was allowed to file a late notice of appeal nearly three years after being convicted. In the 18 months that followed, the defendant attempted to compile a complete record on appeal. However, the court reporter was unable to locate the stenographic notes of the bench trial. Furthermore, the defendant's attempt to prepare a bystander's report was unsuccessful because neither defense counsel, the prosecutor, nor the trial court could locate its notes or files and no one had a sufficient independent memory of the proceedings. The defendant argued on appeal that she was entitled to a new trial because, through no fault of her own, there was no transcript of her trial court proceedings. In granting the defendant's request for a new trial, the Ramos court considered the relative fault of the parties, the importance of the missing portion of the record, and whether an alternative would suffice for an effective appeal. Ramos, 295 Ill. App. 3d at 526-27. The court found that the defendant had demonstrated that she was not at fault for failing to provide a complete record since the court reporter was unable to locate the transcript of the trial proceedings and, despite diligent attempts, the defendant was unable to comply with the requirements for filing a bystander's report. Ramos, 295 Ill. App. 3d at 526-27. The Ramos court also found that the defendant presented a colorable need for a verbatim transcript and that it could not afford the defendant meaningful appellate review without the transcript because the defendant was challenging the sufficiency of the

evidence. <u>Ramos</u>, 295 Ill. App. 3d at 526-27. Thus, <u>Ramos</u> follows the analysis first developed in <u>Stark</u> and expanded upon in <u>Seals</u>.

After reviewing <u>Stark</u>, <u>Seals</u>, and <u>Ramos</u>, we glean the following. The defendant is obligated to provide a sufficiently complete record for appellate review. This rule is relaxed where the incomplete record results through no fault of the defendant and the defendant has established a colorable need for the missing portion of the record in order to obtain appellate review. In the present case, therefore, defendant must establish both that the audiotape is missing not due to his fault and that there is a colorable need for the missing recording in order to receive meaningful review of the errors in issue. If both are established, the State must show that an alternative to the missing exhibit will suffice for an effective appeal.

We find that defendant has demonstrated that the lack of the audiotape is due to no fault of his own. Upon discovering that the tape was missing, the appellate defender made several attempts to locate the tape, including contacting the clerk of the circuit court, the State's Attorney's office, and the trial judge. Unsuccessful through these means, defendant invoked the assistance of this court by filing a motion to compel production of the audiotape. In response, we issued an order requiring the clerk of the circuit court of Winnebago County to either produce the exhibit within 30 days or file an affidavit stating why the exhibit is not available. In his affidavit, the clerk stated that the exhibit "was not provided to [the clerk's] office and is not indicated on [the] docket sheets as being admitted in Court and made a part of the court file. There was no knowledge that such an [e]xhibit ever existed." The clerk conceded in his affidavit that the tape was admitted into evidence at defendant's trial and marked as an exhibit, but he indicated that the tape was neither given to the clerk's office nor made a part of the court file. The clerk noted that his office does not retain all items placed in evidence

and/or marked as exhibits. The clerk further stated that his office learned early in May 2006 that the Rockford police department had possessed the tape until May 19, 2004. On that date, a representative from the State's Attorney's office checked out the tape. The tape was never returned to the police department's property room.

In his motion to compel, defendant related that in Winnebago County "evidentiary exhibits are often retained by the State's Attorney's Office instead of being held by the clerk." This statement corresponds with Rule 18 of the Rules of the Circuit Court for the 17th Judicial Circuit (17th Judicial Cir. Ct. R. 18 (eff. April 7, 1999)), which includes Winnebago County. Rule 18 states that "[e]xhibits received at trial *** in any *** criminal matter heard in Winnebago County, shall be retained by the offering party unless otherwise ordered by the trial judge." 17th Judicial Cir. Ct. R. 18 (eff. April 7, 1999). In a letter attached to defendant's motion to compel, the State denied that it took custody of the exhibits after the conclusion of defendant's trial, claiming instead that the court retained the items. However, it was the State that offered the audiotape into evidence, and we find no evidence of record that the trial judge ordered a party other than the State to retain the exhibit. In short, the aforementioned evidence demonstrates that despite diligent attempts, defendant was unable to locate the whereabouts of the missing recording. More important, the evidence indicates that prior to trial a representative from the State's Attorney's office checked out the exhibit from the police, the exhibit was never returned, the exhibit was subsequently played for the jury, and it is the practice in Winnebago County that the party offering an exhibit--in this case the State--retain the exhibit unless otherwise ordered by the court. As noted, there is no indication in the record that the court ordered anyone to retain the audiotape. Based on this evidence, we find that the absence of the audiotape is due to no fault of defendant's.

We also find that defendant has established a colorable need for the missing exhibit. Defendant argues that without the missing tape, it would be impossible to assess his claim that the State failed to prove him guilty beyond a reasonable doubt. We agree. As charged in this case, a person commits the offense of harassment by telephone when he (1) makes a telephone call and (2) places the call with the intent to abuse, threaten, or harass a person at the number called. 720 ILCS 135/1--1(2) (West 2004); People v. Karberg, 356 Ill. App. 3d 500, 502 (2005). At trial, the State attempted to prove defendant's intent by playing the tape for the jury. As the prosecutor stressed during closing argument, "the nature of the messages and the tone of the defendant's voice when he left those messages clearly indicates that the only intent he had was to abuse, threaten and harass Greg." (Emphasis added.) Aside from the tape itself, the only evidence regarding the contents of the recording came from defendant himself. While defendant did not deny leaving messages on Greg's answering machine, he disputed the State's claim that he intended to threaten Greg. According to defendant, he merely left a message about a dream he had. Defendant also testified that the messages were left over a period of time and prior to the date alleged by Greg. Moreover, during deliberations, the jury asked to hear the recording of the phone calls again. Although the trial court denied the request, the inquiry itself suggests the importance of the tape. Based on the foregoing, we find that the tape was crucial in proving the State's claim that defendant intended to abuse, threaten, or harass Greg.

Having found that defendant has established a colorable need for the lost exhibit, the question becomes whether an alternative to the missing recording will suffice for an effective appeal. We conclude that an adequate alternative is not available. The State acknowledges that the appellate defender made several unsuccessful attempts to locate the tape. According to the State, however, the appellate defender could have done more, such as obtain a bystander's report or an agreed

statement of facts. Our supreme court rules do provide for the submission of a bystander's report if "no verbatim transcript of the evidence of proceedings is obtainable." 210 Ill. 2d R. 323(c); see also 210 Ill 2d R. 612(c). In this case, a verbatim transcript of the evidence of the proceedings was available, and we do not find nor does the State cite any authority for the proposition that Rule 323(c) contemplates the creation of a bystander's report where physical evidence admitted at trial is missing. The rules also allow for the filing of an agreed statement of facts in lieu of a report of proceedings, upon the stipulation of the parties. 210 Ill. 2d Rs. 323(d), 612(c). Again, the State cites no authority that this rule applies to the recreation of physical evidence. In any event, we find it unlikely that the parties would stipulate to the contents of the missing tape, especially since defendant disputed the contents of the tape at trial and alluded to his belief that the recording had been altered. Moreover, the State emphasized during closing arguments the nature of the messages and the tone of defendant's voice when he left the messages. As defendant asserts, such information along with the presence of any gaps in the recording cannot be captured in an agreed statement of facts and could reflect upon the authenticity and intent of the messages.

Accordingly, we find that the absence of the tape, which forms the basis of the State's case for harassment by telephone, deprives defendant of a sufficient record to permit a proper and full consideration of his claims. Because defendant's right to appeal has been impaired, we reverse the judgment of the circuit court of Winnebago County, and we remand this cause for a new trial.

Reversed and remanded.

BYRNE and CALLUM, JJ., concur.