# Illinois Official Reports

## Appellate Court

---

*Bocock v. Will County Sheriff*, 2018 IL App (3d) 170330

---

| | |
|---|---|
| Appellate Court Caption | CHARLES BOCOCK, Plaintiff-Appellant, v. THE WILL COUNTY SHERIFF, Defendant-Appellee. |
| District & No. | Third District<br>Docket Nos. 3-17-0330, 3-17-0331, 3-17-0406 cons. |
| Rule 23 order filed | February 14, 2018 |
| Rehearing denied | March 13, 2018 |
| Motion to publish allowed | March 27, 2018 |
| Opinion filed | March 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 15-CH-976, 15-CH-1052, 16-MR-2527; the Hon. Arkadiusz Z. Smigielski, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Charles Bocock, of Joliet, appellant *pro se*.<br><br>James W. Glasgow, State's Attorney, of Joliet (Kevin J. Meyers, Assistant State's Attorney, of counsel), for the appellee. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
                    Justices Holdridge and Lytton concurred in the judgment and opinion.


## OPINION

¶ 1        Plaintiff, Charles Bocock, was a pretrial detainee at the Will County Adult Detention Facility (WCADF) during 2015 and 2016. During this time period, plaintiff requested numerous records from WCADF through the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)). The WCADF did not comply with plaintiff's various requests for information. Those denials resulted in three separate lawsuits filed by plaintiff against the Will County Sheriff (defendant). Plaintiff now appeals the adverse ruling in all three cases, and the three separate appeals have now been consolidated for purposes of this appeal. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                        FACTS
¶ 3                            I. Plaintiff's First Complaint
¶ 4        On April 10, 2015, plaintiff filed a complaint, followed by an amended complaint (first amended complaint) on June 23, 2015, in Will County case No. 15-CH-976. The first amended complaint alleged defendant improperly denied five FOIA requests initiated by plaintiff. The first amended complaint contained five counts—tracking the original five FOIA requests—with each count seeking both an injunction compelling defendant to produce the requested documents and civil penalties for the alleged willful and intentional failure to comply with FOIA. Count V of plaintiff's first amended complaint is the only count relevant to this consolidated appeal. In count V, plaintiff alleged he filed a FOIA request on March 22, 2015, seeking "Documentation showing the brand, product name, ingredients, nutrition information, expiration / best by date of the milk drink served on the morning of 3/21/15." Plaintiff alleged he received the following response to his request:

> "The [WCADF] Food Service personnel have advised that the milk drink served on 3/21/15 was a commodity and there was only enough for one meal. Food Service personnel have checked all of the commodities and determined that they no longer possess any of the product or any labeling or product information from the milk drink."

Plaintiff further alleged defendant failed to "search any of its garbage or trash receptacles or Dumpsters for remaining containers from the milk drink."

¶ 5        Defendant filed a motion to dismiss count V of plaintiff's first amended complaint on two grounds. First, defendant claimed that a used milk container did not qualify as a public record and could "more accurately [be] defined as refuse or garbage, as they are part of food items served to pre-trial detainees at the facility." Alternatively, even if the refuse could be considered a public record, defendant argued that "[c]ombing through days old garbage *** would impose undue burden."

¶ 6        Plaintiff filed a reply to defendant's motion to dismiss. In his reply, plaintiff stated that the milk container was on WCADF premises at the time of his FOIA request, albeit in the garbage. In addition, plaintiff conceded that the packaging for the used milk carton was no longer in defendant's possession, mooting his request for injunctive relief.

¶ 7 Following a hearing held on February 11, 2016, the circuit court dismissed count V of plaintiff's first amended complaint, finding that the milk container was not a public record. However, the court denied defendant's motion to dismiss, in part, and ordered defendant to answer the first three counts of plaintiff's first amended complaint.

¶ 8 II. Plaintiff's Second Complaint

¶ 9 Plaintiff filed a separate 11-count complaint (second complaint) on June 23, 2015, Will County case No. 15-CH-1052, pertaining to the denial of previous FOIA requests made by plaintiff for records that were unrelated to those records relevant to the pending lawsuit in Will County case No. 15-CH-976. Once again, plaintiff sought injunctive relief compelling defendant to produce the requested documents and the assessment of civil penalties against defendant on each count. It is undisputed that defendant denied each of plaintiff's FOIA requests.

¶ 10 The circuit court's rulings on counts VI, X, and XI are the only rulings at issue in the present appeal. Count VI of plaintiff's second complaint pertained to plaintiff's FOIA request seeking a "List of all lockdown dates/times/durations/reasons during March 2015" (lockdown documents). In Defendant's answer to plaintiff's second complaint, defendant asserted the records requested in count VI were exempt under FOIA, in that giving an inmate information regarding lockdowns "would present a danger to security within the WCADF." See *id.* § 7(1)(e).

¶ 11 Count X of plaintiff's second complaint alleged plaintiff made a FOIA request seeking "All documentation (*e.g.* emails, grievances) regarding detainee Christopher Conway's last/stolen books, including amount paid in compensation for the loss" (Conway documents). In the answer to count X, defendant asserted the requested documents were exempt under FOIA (see *id.* § 7(1)(c)) in that disclosure to plaintiff would violate Conway's privacy interest in his private personal information. See *id.* § 7(1)(e).

¶ 12 Count XI of plaintiff's second complaint alleged plaintiff made a FOIA request seeking a copy of the WCADF "Policies and Procedures" manual (policy manual). In the answer to count XI, defendant asserted the policy manual was exempt for security purposes.

¶ 13 Furthermore, plaintiff alleged that after his request for the policy manual was denied, plaintiff submitted the case to the Illinois Attorney General's Public Access Counselor for further review. See *id.* § 9.5(a) (proving that a person whose FOIA request is denied may file a request for review by the Public Access Counselor). After conducting a confidential review of the manual, the Public Access Counselor found that while certain portions of the policy manual (often regarding the location of weapons or the intake and movement of inmates) were exempt from FOIA and subject to redaction, the policy manual as a whole was not exempt from FOIA. The nonbinding determination letter prepared by the Public Access Counselor concluded defendant should provide plaintiff with the redacted policy manual but declined to issue a binding opinion. Defendant also admitted to the existence and substance of the Public Access Counselor's letter but answered these allegations by observing the letter was not intended to be binding.

¶ 14 In an order dated July 19, 2016, the court agreed to review *in camera* documents pertaining to the dates and times of lockdowns and documents pertaining to WCADF's compensation for Conway's books. Defendant also submitted a number of Bates-stamped documents for the court's *in camera* review.

¶ 15 On July 22, 2016, the court entered an order that began: "Cause comes on for entry of order consistent with the court's ruling in open court on July 19, 2016." The court ordered defendant to produce a list of the times and dates of lockdowns occurring in March 2015 but ruled that information relating to the reasons for or durations of the lockdowns was exempt. The court ruled the Conway documents exempt in full based on Conway's privacy interests and plaintiff's lack of legitimate interest in the documents. In an order dated July 27, 2016, with regard to the policy manual, the court wrote: "Jail operations manual is exempt in total, with exception of bates # 0-05." As none of the Bates-stamped materials appear on the appellate record, this court has no way to determine which portions of the manual were deemed exempt and which portions were not.

¶ 16                                                    III. Trial

¶ 17 Plaintiff's first amended complaint (case No. 15-CH-976) and second complaint (case No. 15-CH-1052) were consolidated for trial. Plaintiff, in his brief, characterizes the trial as pertaining only to the issues of civil penalties raised in both complaints. Each case contains the following identical order dated February 2, 2017, apparently issued after the trial: "Matter for directed finding on all counts is granted for reasons established by court." The report of proceedings of the trial has not been included in the record on appeal.

¶ 18 Plaintiff filed a motion to vacate judgment in Will County case No. 15-CH-976 and Will County case No. 15-CH-1052. After the trial court denied the request to vacate the judgment in each case, plaintiff filed a timely appeal in both cases on May 12, 2017.

¶ 19                                       IV. Plaintiff's Third Complaint

¶ 20 On September 27, 2016, plaintiff filed an unrelated third complaint (third complaint). This filing was case No. 16-MR-2527. In the third complaint, plaintiff alleged that after the price of stamps had been reduced from 49 cents to 47 cents by the United States Postal Service (USPS), the WCADF continued selling stamps and books of stamps at the higher price. In relation to this claim, plaintiff filed a FOIA request seeking "Documents showing name + CIMIS of all detainees who purchased stamps/books of stamps for 49¢/$4.90 after the price was reduced to 47¢ per stamp by the USPS. Also to include the amount of stamps purchased."

¶ 21 Plaintiff alleged in the complaint that defendant responded by informing him that "a list showing names and booking numbers listing detainees whom purchased stamps does not exist." According to plaintiff, defendant further responded: "However, a report does exist to show how many stamps were purchased for $0.49 after the rate drop." Defendant informed plaintiff that 566 single stamps and 30 books were sold "after the rate drop." Plaintiff alleged in his complaint that every purchase from the commissary generates a receipt showing what each inmate purchased. He attached as an exhibit to his complaint one of his own such receipts, showing the date he had purchased stamps.

¶ 22 Defendant filed a combined motion to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure (Code). See 735 ILCS 5/2-615, 2-619 (West 2016). In the motion, defendant asserted plaintiff "was essentially seeking an answer to the question of which inmates were overcharged for stamps purchased through the commissary." Further, defendant asserted it had never sold stamps purchased for 47 cents to inmates for 49 cents, and "[t]herefore no such documents exist, and it would be impossible to tender non-existent documents."

¶ 23    Defendant attached to its motion an affidavit from Ken Wright, vice president of sales for the Keefe Group (Keefe), the parent company of WCADF's commissary provider (Keefe affidavit). In the affidavit, Wright swore that all the stamps sold through the WCADF commissary through June 9, 2016, had been purchased by Keefe from the USPS for 49 cents each. He averred that all stamps resold to inmates for 49 cents had been purchased originally for 49 cents. The price at which the stamps were resold to inmates was reduced to 47 cents on June 10, 2016, following complaints from inmates.

¶ 24    On June 9, 2017, the circuit court held a hearing on defendant's motion to dismiss Will County case No. 16-MR-2527. At the hearing, defendant insisted that all of its stamps had been purchased in bulk prior to the price reduction and provided an affidavit stating the same. Defendant argued this fact proved it had not violated FOIA, as no documents showing which inmates had been overcharged existed. Defendant reiterated it did not have to answer plaintiff's question of who had been overcharged.

¶ 25    Plaintiff argued he had not asked a question but requested documents. He argued that defendant's partial response, detailing the number of stamps sold following the price reduction, indicated defendant understood his request, including the relevant time period. Plaintiff insisted that commissary receipts were in each inmates's file and therefore accessible by defendant. Though plaintiff maintained the actual overcharging of inmates was irrelevant to his FOIA request, he pointed out that if the commissary had purchased stamps in bulk at a higher price, "[t]hat's on them."

¶ 26    The circuit court granted defendant's motion to dismiss. It agreed with the defendant's argument that a stamp purchased at 49 cents could be resold for 49 cents. The court also pointed out that plaintiff had not requested the commissary receipts of any particular inmate, nor had he specified the date of the price change. Plaintiff interjected, arguing defendant demonstrated awareness of that date by disclosing the number of stamps sold. The court responded: "Okay. Nonetheless I am granting the [defendant's] motion."

¶ 27    Plaintiff timely appealed the ruling in Will county case No. 16-MR-2527. This court consolidated that appeal with the appeals stemming from plaintiff's first amended complaint and second complaint for purposes of this appeal.

¶ 28                                        ANALYSIS

¶ 29    On appeal, plaintiff argues the circuit court erred by denying injunctive relief and failing to order defendant to turn over the following documents to plaintiff: (1) the discarded container of milk sought in the first amended complaint (case No. 15-CH-976), (2) the full lockdown documents sought in the second complaint (case No. 15-CH-1052), (3) the Conway documents sought in the second complaint (case No. 15-CH-1052), and (4) the full policy manual sought in the second complaint (case No. 15-CH-1052). Plaintiff also argues (5) the circuit court erred by dismissing his third complaint (case No. 16-MR-2527) relating to the sale of stamps.

¶ 30    In this appeal, plaintiff contends the circuit court erred by denying his requests for civil penalties in his first amended and second complaints. The circuit court denied that relief by granting a directed verdict during the trial conducted on February 2, 2017. The report of proceedings does not appear as part of the record on appeal.

¶ 31    Without a report of proceedings and in the absence of any evidence to the contrary, it must be "presumed that the court heard adequate evidence to support the decision that was

rendered." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394 (1984); see also *People v. Fernandez*, 344 Ill. App. 3d 152, 160 (2003) ("[A]ny doubts arising from the incompleteness of the record will be construed against defendant, whose responsibility it was as appellant to present a complete record on review."). Accordingly, we affirm the circuit court's ruling denying the award of civil penalties in case Nos. 15-CH-976 and 15-CH-1052.

### I. Milk Container

Plaintiff argues "the trial court erred in determining records in the garbage are not public records." Plaintiff does not state explicitly what relief he is seeking, only concluding by "pray[ing] this Court to declare that records stored in the garbage by a public body *** are public records under the meaning of the FOIA." On January 13, 2016, in plaintiff's response to defendant's motion to dismiss, plaintiff wrote that he "concedes that the packaging is now no longer in the possession or control of the SHERIFF therefore mooting his request for injunctive relief."

We cannot ignore plaintiff's concession on this issue. A question is moot when it presents no actual controversy or where the issues involved have ceased to exist. *People v. Blaylock*, 202 Ill. 2d 319, 325 (2002). "Courts of review will generally not consider moot or abstract questions because our jurisdiction is restricted to cases which present an actual controversy." *Id.* The issue of injunctive relief relating to the milk container is moot because the used milk container is outside the control of defendant at this point. It would be impossible for defendant to produce the milk container, even if ordered to do so.

As a corollary to the mootness doctrine described above, an appellate court generally will not issue advisory opinions. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). While reviewing courts will occasionally consider a moot issue under an exception to the doctrine, plaintiff has failed to raise or argue in favor of any such exception in the present case. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017). Accordingly, because the issue relating to the milk container is moot, this court need not address plaintiff's argument that the container should be considered a public record.

### II. Lockdown Documents and Conway Documents

Plaintiff next argues the circuit court erred by failing to grant in full his request for injunctive relief regarding the lockdown documents and the Conway documents. Regarding the lockdown documents, the court ordered defendant to disclose the dates and times of the lockdowns but allowed defendant to withhold the durations and reasons for the lockdowns, citing security purposes. Regarding the Conway documents, the court denied plaintiff's request for injunctive relief, citing Conway's personal privacy and plaintiff's lack of a legitimate interest in that information.

Section 1.2 of FOIA provides that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." 5 ILCS 140/1.2 (West 2014). The exemptions provided by FOIA include "[p]ersonal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," (*id.* § 7(1)(c)) and "[r]ecords that relate to or affect the security of correctional institutions and detention facilities" (*id.* § 7(1)(e)). Thus, defendant bore the burden to show, by clear and convincing evidence, that the

Conway documents and the lockdown documents, respectively, qualified for the exemptions the trial court relied on.

¶ 39 The report of proceedings in case Nos. 15-CH-976 and 15-CH-1052 has not been included in the record on appeal. We have no record of what transpired in open court on July 19, 2016 and are unable to determine if defendant presented any witnesses or other evidence. We must once again construe this uncertainty, arising from an incomplete record, against plaintiff as appellant and presume "that the court heard adequate evidence to support the decision that was rendered." *Foutch*, 99 Ill. 2d at 394. Accordingly, we affirm the circuit court's ruling granting in part and denying in part plaintiff's request for injunctive relief with respect to the lockdown documents. We also affirm the circuit court's ruling denying in full plaintiff's request for injunctive relief with respect to the Conway documents.

¶ 40 III. Policy Manual

¶ 41 Plaintiff next contends the circuit court erred when the court found the policy manual "exempt in total." He argues the policy manual must cover a wide range of topics, many of which would not relate to the security of the facility, and defendant failed to prove by clear and convincing evidence that those portions of the manual should not be exempt from FOIA.

¶ 42 The policy manual, which the circuit court reviewed *in camera*, is not included in the record. Obvious difficulties are presented when reviewing whether the policy manual should be exempt from FOIA, without access to the manual itself. As stated above, an insufficient record on appeal is generally construed against appellant. *Id.* This remains the case here. Even when plaintiff is not privy to the materials in question, plaintiff could have requested the circuit court submit the materials under seal. See *People v. Deleon*, 227 Ill. 2d 322, 342 (2008).

¶ 43 The incompleteness of the record requires us to affirm the circuit court's ruling where that incompleteness hinders our review. *E.g.*, *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 11; *People v. Appelgren*, 377 Ill. App. 3d 137, 141 (2007). Here, our ability to review the issue is plainly hindered by the lack of the policy manual, as we are unable to parse the individual policies within the manual to determine which policies should be exempt. Accordingly, we must affirm the circuit court's ruling.

¶ 44 IV. Stamps

¶ 45 Finally, plaintiff argues the circuit court erred as a matter of law when it granted defendant's motion to dismiss the third complaint (case No. 16-MR-2527), seeking the production of records relating to WCADF's sale of stamps. In response, defendant reiterates the arguments it made before the circuit court, that plaintiff's request did not reasonably describe the records sought and, alternatively, no such records exist.

¶ 46 We note that defendant's motion to dismiss plaintiff's third complaint was brought under both sections 2-615 and 2-619 of the Code and properly divided its arguments into the corresponding sections. See 735 ILCS 5/2-619.1 (West 2016). Because those sections contemplate dismissals on different grounds, we will address each in turn. We review the circuit court's granting of any motion to dismiss *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 47 When ruling on a motion to dismiss brought under section 2-615 of the Code, "[a]ll well-pleaded facts alleged in the complaint and all reasonable inferences from them are to be

taken as true [citation], and the allegations are to be viewed in the light most favorable to the plaintiff." *Oldendorf v. General Motors Corp.*, 322 Ill. App. 3d 825, 828 (2001). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 48    Our supreme court has held that "when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions *** applies." *Illinois Education Ass'n v. Illinois Board of Education*, 204 Ill. 2d 456, 463 (2003). No distinction has been made, either in case law or in FOIA itself, between a "proper" and an improper request. Defendant argues, however, that a proper FOIA request must provide a reasonable description of the documents sought so that the public body is able to retrieve those documents. Defendant also cites *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 33, for the proposition that "[a] request to inspect or copy must reasonably identify a public record and not general data, information, or statistics."

¶ 49    Initially, we are not persuaded by defendant's argument that our supreme court—in the excerpt from *Illinois Education Ass'n* quoted above—intended to create a line of demarcation between proper and improper FOIA requests. Such a distinction would lie completely outside of FOIA itself. Rejection of such a position perhaps explains the relative dearth of case law in which a FOIA suit has been resolved on a section 2-615 motion.

¶ 50    Even if we were to accept that argument, plaintiff's FOIA request in the present case was proper. Plaintiff merely requested documents showing which WCADF detainees had purchased stamps in a certain time period. Plaintiff's FOIA request cannot be construed as a general inquiry or a request for data. It is, explicitly, a request for documents. Plaintiff identified the documents sought based upon a description of their contents. To require a citizen seeking public records to identify those records with any greater specificity would be in complete contravention of the public policy underlying FOIA. Indeed, plaintiff's request surely must not have been irreparably vague, given that defendant was able to conduct a "thorough search" of its files and records and conclude the documents sought did not exist.

¶ 51    We further reject the argument that plaintiff's FOIA request was improper because it did not include a time frame for the records requested. In his FOIA request, plaintiff sought records relating to the sale of stamps after the time the USPS lowered the price of stamps from 49 cents to 47 cents. While the third complaint identified the exact date of the price drop, this information was not conveyed in the FOIA request itself. In its response to the FOIA request, however, defendant wrote: "[A] report does exist to show how many stamps were purchased for $0.49 after the rate drop." Thus, defendant plainly demonstrated awareness of the time frame in question, and may not now claim otherwise.

¶ 52    Section 2-619(a)(9) permits involuntary dismissal where the claim asserted against defendant "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). In reviewing the grant of a motion to dismiss under section 2-619, a reviewing court considers the pleading and any supporting documents found on the record, interpreting everything in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). The nonexistence of requested documents is a cognizable affirmative defense to a complaint grounded in FOIA. *E.g.*, *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836.

¶ 53    Defendant asserts that plaintiff's FOIA request was "interpreted as a request for the names and inmate identification numbers of those who were overcharged for the stamps purchased through commissary." Next, defendant points out that the Keefe affidavit demonstrates that all stamps sold at WCADF for 49 cents were originally purchased for 49 cents. "Therefore," defendant writes, "the WCADF commissary did not overcharge any inmates $0.02 per stamp," and in turn, no records of such overcharging could possibly exist.

¶ 54    Defendant's argument, both before this court and before the circuit court, rests on a fundamental mischaracterization of plaintiff's FOIA request. Plaintiff asked for records of stamps being sold to inmates for 49 cents after the USPS lowered the price to 47 cents. This is an objective request for documents. Whether or not inmates were "overcharged" for stamps is a legal conclusion read into plaintiff's request entirely by defendant. Plaintiff did not request that information nor did his request require the production of compiled information.

¶ 55    Based on this record, the pleadings and supporting documents do not support defendant's contention that the documents plaintiff requested did not exist concerning the sale of stamps to inmates. Here, the supporting document provided by plaintiff is a copy of his own commissary receipt showing the purchase of stamps by plaintiff. This receipt demonstrates that defendant prepares records of the stamps purchased by individual inmates.[1] It appears to this court that WCADF prepares receipts for stamp sales and the production of such existing records would be responsive to plaintiff's FOIA request. Consequently, we reject a dismissal premised upon section 2-619 of the Code for lack of records would be improper.

¶ 56    Construing the pleadings and supporting documents in the light most favorable to plaintiff, his original FOIA request was not fatally unclear. In summary, neither section 2-615 nor section 2-619 of the Code supports dismissal of the third complaint (case No. 16-MR-2527).

¶ 57    We affirm the trial court's rulings denying plaintiff's complaint seeking injunction relief and civil remedies with respect to the complaint in case No. 15-CH-976 and the complaint filed in case No. 15-CH-1052. We reverse the circuit court's ruling dismissing plaintiff's third complaint in case No. 16-MR-2527 and remand for further proceedings.

¶ 58                                    CONCLUSION

¶ 59    The judgment of the circuit court of Will County is affirmed in part, reversed in part, and remanded for further proceedings.


¶ 60    Affirmed in part and reversed in part.

¶ 61    Cause remanded.

---

[1]While defendant might argue that querying each inmates' commissary records from the given time period might be unduly burdensome, it does not make such an argument before this court and did not do so in the circuit court. More importantly, FOIA sets out specific steps to be undertaken where a public body deems a request unduly burdensome, including allowing the requesting party to amend their request. 5 ILCS 140/3(g) (West 2014). Defendant did not follow any of those steps.