No. 2--05--0582      Filed: 12-19-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos.    04--DT--187        04--TR--9907 |
| RONNELL R. BANKS, | ) ) ) | Honorable Robert L. Janes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial in the circuit court of Kendall County at which defendant, Ronnell R. Banks, was convicted of driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2004)) and driving while his license was suspended (625 ILCS 5/6--303 (West 2004)), defendant appeals. On appeal, defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of driving while his license was suspended, because there was no evidence that his license was actually suspended on the date of the purported offense. Defendant also contends that the fact that a videotape of the traffic stop was lost renders the record insufficient for appellate review and thereby deprives him of his constitutional right to a direct appeal. Finally, defendant asserts that the evidence was insufficient to prove him guilty of DUI. We reject defendant's contentions and affirm.

I. BACKGROUND

We summarize the pertinent facts. On February 1, 2005, a bench trial commenced. A verbatim transcript of the testimony rendered during trial was not prepared. Instead, for purposes of appeal, the parties prepared an agreed statement of facts and attached police reports prepared by Sergeant Terry Klingel of the Yorkville police department and Deputy John Collins of the Kendall County sheriff's department. The parties indicated that the police officers testified consistently with their narrative reports. Additionally, Deputy Mitch Hattan of the Kendall County sheriff's department testified similarly to Klingel and Collins. The following recitation is taken from the police reports attached to the agreed statement of facts. We note that absent from the agreed statement of facts is any indication that defendant objected to the hearsay testimony regarding defendant's suspended license, which was admitted into evidence instead of a certified driver's abstract. Also absent is any best-evidence objection.

Klingel related that, at about 11:30 p.m., on Friday, September 17, 2004, he was dispatched to the area of Route 126 and Minkler Road. There, he observed a red Chevrolet sport utility vehicle (SUV), registered to defendant, with its hazard lights activated. As Klingel approached the vehicle, he observed defendant exit the passenger side of the SUV. Klingel observed that defendant was staggering as he exited the vehicle. Klingel asked defendant if he was okay. Defendant responded that he was fine, but Klingel noted that defendant's speech was "slurred" and "thick-tongued." Klingel also noticed that an odor of an alcoholic beverage was emanating from defendant's face and mouth. Klingel asked if defendant had been drinking that night and defendant stated, in slurred speech, that he had. Klingel asked defendant if he had been driving. Defendant informed Klingel that he had been driving and drinking, but did not want to drive anymore, so he pulled onto the side of the road. As Klingel was speaking to defendant, he noticed a beer bottle protruding from a paper bag that was

lying on the floor of the front passenger side of the vehicle. Klingel, who was outside of his jurisdiction, called for a Kendall County sheriff's deputy.

Collins reported that, upon arriving at the scene, Klingel related that defendant appeared to be intoxicated and had admitted that he had been drinking alcohol, and Klingel reported that he had observed a bottle of beer in a paper bag under defendant's feet. Collins related that Klingel had learned defendant's name, and Collins noted in his narrative report that defendant's "driver's license status was that of suspended as of 10/01 for [a previous conviction of] driving under the influence [(625 ILCS 5/]11--501(a)(2) [(West 2004))]."

Collins related that, when he asked defendant to roll down the passenger window, defendant appeared to have trouble doing so. Collins opened the passenger door for defendant and noticed the odor of alcohol coming from the car. Collins noticed that defendant was disheveled and had glassy, bloodshot eyes. Collins observed a bottle of beer inside a paper bag on the passenger-side floor of the car.

Collins related that defendant said that he ran out of gas and would need help. Collins asked defendant where he was coming from and defendant stuttered and appeared to be confused as he answered. Defendant pointed and appeared to have trouble formulating his answer. Defendant stuttered and told Collins that his wife did not want him to return home. Defendant told Collins that, when he arrived at home, his wife told him to leave and he did so.

Collins related further details about the encounter, in which defendant appeared to be confused and contradicted himself. For example, defendant claimed to be heading toward Aurora, but he was not headed in the direction toward Aurora when he was found by police. Additionally, defendant claimed to have obtained food from a Portillo's restaurant, but instead had food wrapped

in McDonald's packaging in his car. Defendant also told Collins repeatedly that he had not been drinking alcohol, which contradicted what he told Klingel.

Collins asked defendant to get out of the car and to come to the rear of his vehicle. Collins smelled a strong alcoholic odor coming from defendant. Collins again asked defendant if he had consumed any alcohol, and defendant replied that he had "had one beer." Defendant refused to take a field sobriety test. Collins then arrested defendant. Collins' search of defendant's car uncovered four unopened bottles of beer, two opened bottles of beer with very little beer remaining, and one opened can of beer with a small amount of beer remaining. Defendant was transported to the county jail and charged with, among other things, DUI and driving while his license was suspended. The beer containers were placed into evidence as well as a videotape of the encounter recorded from Collins' dashboard video camera.

Also attached to the agreed statement of facts was Collins' "Law Enforcement Sworn Report" (sworn report). The report contained check boxes to indicate whether defendant surrendered his driver's license. The "No" box was checked, and Collins recorded that defendant did not surrender his license at the time of the encounter because his "driver[']s license [was] suspended."

During the encounter, Collins requested that a deputy be dispatched to defendant's home to make sure that no violence had occurred between defendant and his wife. Hattan responded to the call. Hattan learned from defendant's wife that defendant had come home drunk and that she told him to leave.

A dashboard videotape of the encounter with defendant was displayed to the trial court. According to the agreed statement of facts, the videotape displays "a portion of the events testified to by Deputy Collins and Sergeant Klingel."

Defendant did not testify at trial. No other evidence was offered on his behalf. The trial court noted that, following "presentation of testimony & video," it found defendant guilty of both charges. For the DUI conviction, defendant was sentenced to a 364-day term of imprisonment, and for the conviction of driving while his license was suspended, defendant was sentenced to a 24-month term of probation. In addition, defendant was assessed fines and costs totaling $750 and required to undergo a level III alcohol treatment program, which was modifiable based upon defendant's evaluation. Defendant's posttrial motions were denied, and defendant timely appeals. At some point while the appeal was pending, the parties discovered that the videotape of the traffic stop and arrest was no longer in the possession of either the circuit court clerk, the State's Attorney, or the public defender. Included in the record on appeal is an affidavit acknowledging that none of those parties had or were able to locate a copy of the videotape of defendant's traffic stop and arrest.

## II. ANALYSIS

On appeal, defendant challenges the sufficiency of the evidence of his convictions of driving while his license was suspended and DUI. Defendant also contends that the loss of the videotape of his traffic stop and arrest makes the record insufficiently complete for review and thereby deprives him of his right to appeal his conviction of DUI.

A. Sufficiency of Evidence to Sustain Conviction of Driving While His License Was Suspended

Defendant's initial argument on appeal is that the evidence is insufficient to prove that his license was suspended on the date of the traffic stop. Defendant points to a phrase in Collins' narrative report that related that defendant's "driver's license status was that of suspended as of 10/01 for [a previous conviction of] driving under the influence [(625 ILCS 5/]11--501(a)(2) [(West 2004))]." Defendant contends that this is ambiguous and could mean that defendant's license was due

to be suspended October 1, about two weeks after the date of the traffic stop at issue here, or was suspended in October 2001, three years before the stop. Defendant also notes that there is no driver's abstract or other documentary evidence in the record to show that defendant's license was suspended on September 17, 2004, the date of the stop. However, defendant did not argue the best-evidence rule or inadmissible hearsay below or in this court. Defendant concludes that the evidence was insufficient to support his conviction of driving while his license was suspended. We disagree.

When a defendant challenges the sufficiency of the evidence, the relevant question for the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt. People v. Berrier, 362 Ill. App. 3d 1153, 1169 (2006). Here, the issue is whether there was sufficient evidence in the record that defendant's license was suspended on the date of the stop.

Often, a circuit court will not have a court reporter present during a trial on a traffic or misdemeanor offense. People v. Malley, 103 Ill. App. 3d 534, 535 (1982). Given Supreme Court Rule 323 (210 Ill. 2d R. 323), which sets out alternate methods for obtaining a report of proceedings for the record on appeal, the presence of a court reporter is not necessarily required in order to ensure that the record on appeal is sufficiently complete for review. The responsibility for preserving a sufficiently complete record of the proceedings before the trial court rests with the defendant, as the appellant. People v. Fernandez, 344 Ill. App. 3d 152, 160 (2003); Malley, 103 Ill. App. 3d at 536. Where the record on appeal is incomplete, any doubts arising from that incompleteness will be construed against the defendant (Fernandez, 344 Ill. App. 3d at 160) and every reasonable presumption will be taken in favor of the judgment below (Malley, 103 Ill. App. 3d at 536).

Moreover, a defendant cannot agree to a statement of facts, fail to obtain a more detailed alternative, and then argue on appeal that the record is insufficient. See People v. Luke, 253 Ill. App. 3d 136, 140 (1993).

With these principles in mind, we turn to defendant's argument that the evidence in the record was insufficient to show that his license was suspended on September 17, 2004. Specifically, defendant contends that the record does not contain direct evidence proving that his license was suspended on that date. We disagree with defendant's contention. First, we note that there were no objections to hearsay evidence. It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural and probative effect. People v. Akis, 63 Ill. 2d 296, 299 (1976). Here, the agreed statement of facts stipulates that the police officers all testified consistently with their reports and that the reports were attached to the agreed statement of facts. Collins filed two reports that were attached to the agreed statement of facts, a narrative report and a sworn report. The narrative report relates that defendant's driver's license was "suspended as of 10/01." Collins' sworn report relates that, at the time of defendant's arrest, defendant did not surrender his driver's license because it was already suspended. The sworn report also states that defendant's driver's license was not valid at the time of defendant's arrest. Taken together, the narrative report and the sworn report reasonably establish that defendant's driver's license was suspended at the time of his arrest. Indulging in all reasonable presumptions in favor of the trial court's judgment demonstrates that the State proved beyond a reasonable doubt that defendant's driver's license was suspended on September 17, 2004. Defendant's argument focuses only on the sufficiency of the evidence and fails to consider the waiver wrought by his failure to object to the

admissibility of the evidence. Accordingly, we reject defendant's contention that the evidence was insufficient to support his conviction of driving while his license was suspended.

### B. Contentions Arising From DUI Conviction

Next, defendant makes a dual contention. First, defendant argues that the omission of the videotape from the record on appeal precludes effective review because the videotape was displayed for the trier of fact. Defendant also argues that the evidence was insufficient to prove his guilt of DUI beyond a reasonable doubt. We will address each contention in turn.

### 1. Reviewability of record

Defendant begins his analysis by arguing that the State has an obligation to provide a record of sufficient completeness to permit appellate review, citing Luke, 253 Ill. App. 3d at 139 ("[t]he State must furnish a record of sufficient completeness to permit proper consideration of [the defendant's] claims"). This rule posited by defendant appears to conflict with the requirement, exemplified in cases like Fernandez and Malley, that a defendant is responsible for preserving and preparing a sufficiently complete record for purposes of appeal. Fernandez, 344 Ill. App. 3d at 160; Malley, 103 Ill. App. 3d at 536. However, the conflict is illusory--the responsibility for preparation of the record remains with the defendant. The financial burden of obtaining a transcript, if the defendant is indigent, is placed upon the State. See Luke, 253 Ill. App. 3d at 139, quoting Griffin v. Illinois, 351 U.S. 12, 19, 100 L. Ed. 891, 899, 76 S. Ct. 585, 591 (1956) ("a State must afford an indigent defendant 'as adequate appellate review as defendants who have money enough to buy transcripts' "). Thus, the responsibility of providing the record for the appellate court to review remains with the defendant; the defendant's financial burden for so doing is borne by the State where the defendant cannot afford to do so.

Having determined that a defendant must provide a sufficiently complete record on appeal, we review the applicable principles. In order to raise an appeal, the defendant must present a record of sufficient completeness to permit proper consideration of the defendant's specific claims of error. People v. Hopping, 60 Ill. 2d 246, 251-52 (1975); Luke, 253 Ill. App. 3d at 139. (As noted above, this obligation remains with even the indigent defendant. The indigent defendant is not disadvantaged unduly, however, because the State must bear the cost of preparing the record on appeal.) Where the court finds that the defendant is not at fault for the incompleteness of the record, it will be amenable to affording the defendant relief on the basis that the record is insufficient to allow appellate review. We provide several examples.

In People v. Stark, 33 Ill. 2d 616 (1966), the supreme court remanded the cause for a new hearing on the defendant's motion to suppress when, through no fault of the defendant, there was no transcript of the suppression hearing available in the record on appeal. The court noted that, where the issues discussed during the suppression hearing touched upon the defendant's knowing waiver of his right to consult an attorney and whether his confession was made knowingly or had been induced by the police, the transcript of the suppression hearing was "essential to an adequate review." Stark, 33 Ill. 2d at 621. Thus, the court in Stark incorporated both whether the defendant was at fault in not providing a portion of the record and the missing portions's importance or materiality to the court's ability to review the matter.

In People v. Ramos, 295 Ill. App. 3d 522, 524 (1998), the defendant's original attorney did not file a notice of appeal. Three years later, the defendant was allowed to file a late notice of appeal. For the next year-and-a-half, the defendant attempted to compile a complete record on appeal, but was unable to locate the stenographic notes of the bench trial. Additionally, the defendant's attempts

to create a bystander's report were unsuccessful because the defense attorney, the prosecutor, and the trial court could not locate their notes or files and had insufficient independent memories of the proceedings. Ramos, 295 Ill. App. 3d at 524. The appellate court ruled that, on the defendant's challenge to the sufficiency of the evidence, the defendant had demonstrated lack of fault in providing an incomplete record as well as some State fault in placing the defendant in that situation. Ramos, 295 Ill. App. 3d at 526-27. As a result, the court held that the defendant was entitled to a new trial in order to vindicate the defendant's right to a direct appeal. Ramos, 295 Ill. App. 3d at 527. Ramos, then, appears to follow the idea in Stark of combining the relative fault of the defendant with the importance or materiality of the missing portion of the record.

In People v. Seals, 14 Ill. App. 3d 413 (1973), the State was ordered to complete a bystander's report but did not obey the order. Ultimately, the trial court provided a synopsis of the proceedings. The defendant filed a statement that conflicted with the trial court's rendition. Seals, 14 Ill. App. 3d at 414. The court noted that the trial court's summary was sufficient to show the defendant's guilt but was full of conclusory language and lacking in detail sufficient to allow appellate review. The court held that the report of proceedings was not sufficient to enable the court to properly review the alleged trial errors, entitling the defendant to a new trial. Seals, 14 Ill. App. 3d at 414. Again, Seals combined the concepts of fault (the defendant bore no fault while the State was at fault for not complying with the order to complete a bystander's report) and the materiality of the missing evidence or portion of the record to the court's ability to review the issues on appeal.

In Stark, Ramos, and Seals, both elements were present: the defendant's lack of fault and the materiality of the missing evidence or portion of the record to the court's review. Defendant, by contrast, suggests that a per se rule should obtain: If evidence presented at trial is missing from the

record on appeal, then the record is not sufficiently complete for appellate review. Our analysis of the law in Illinois belies this per se rule. We therefore turn to other jurisdictions to attempt to discern the roots of defendant's per se rule.

The principles present in Illinois law, materiality of the missing evidence and lack of fault in causing the omission, have been adopted in a number of other jurisdictions. See Chadwick v. State, 214 Ga. App. 643, 448 S.E.2d 751 (1994) (if the defendant fails to take steps to procure a complete record, the court will not review the claim); Hall v. State, 849 N.E.2d 466 (Ind. 2006) (loss of transcript of guilty plea hearing will not prevent review where there is no showing of misconduct by the State and the defendant does not argue that he was prejudiced); Commonwealth v. Pudder, 41 Mass. App. Ct. 930, 673 N.E.2d 82 (1996) (the defendant found to be at fault in failing to provide a transcript; the court did not order a new trial in such a circumstance); Commonwealth v. Barry, 19 Mass. App. Ct. 995, 475 N.E.2d 425 (1985) (neither the defendant nor the Commonwealth was at fault for a gap in the record; the appellate court resolved disputes in favor of the defendant to nullify any prejudice that may have occurred as a result of the incomplete record); Brawner v. State, 947 So. 2d 254 (Miss. 2006) (the defendant possessed the tapes necessary to provide a complete record but did not provide a complete record; the court held that the defendant's fault effectively waived the claim of error); Dykes v. McNeill, 735 S.W.2d 213 (Mo. 1987) (the defendant diligently attempted to provide complete record and was therefore not at fault for the incomplete record; the court ordered a new trial because the incomplete record precluded review); State v. Bishop, 350 N.J. Super. 335, 795 A.2d 297 (2002) (the defendant's decision to flee caused the loss of significant portions of the record; the court held that the defendant could not now be rewarded by a new trial due to his earlier wrongful actions); Brown v. State, 743 P.2d 133 (Okla. Crim. App. 1987) (the

defendant held to be at fault for not attempting to obtain videotape he claimed to be missing from record; the court denied the defendant's claim on appeal).

There does not appear to be a uniform national standard regarding how to apportion the burden to provide a sufficiently complete appellate record. For example, some jurisdictions seem to have a no-fault rule: anytime the record on appeal is not sufficiently complete, the defendant will receive relief. See Wilson v. State, 334 Md. 469, 639 A.2d 696 (1994) (where parties attempt to reconstruct record but fail, remedy is new trial); State v. Tilton, 149 Wash. 2d 775, 72 P.3d 735 (2003) (same). Likewise, in other jurisdictions, the burden of maintaining a complete record on appeal rests on the State or the trial court instead of the defendant. In those jurisdictions, the failure to provide a sufficiently complete record on appeal will result in a new trial. See Scott v. State, 355 Ark. 485, 139 S.W.3d 511 (2003) (trial court had responsibility to keep a complete record of the trial; review of record showed it was sufficiently complete for purposes of appeal); Jacobs v. State, 327 Ark. 498, 939 S.W.2d 824 (1997) (trial court had responsibility to keep complete record; new trial ordered where attempts to remedy incomplete record unsuccessful); State v. Walker, 844 So. 2d 1060 (La. App. 2003) (constitution imposes requirement for complete record on appeal; missing evidence crucial to review of case and therefore, the defendant received the remedy of a new trial).

From our examination of cases in Illinois, as well as those in other jurisdictions that follow similar principles, we conclude that the rule described in Hopping provides the general statement of the law in Illinois: the defendant is obligated to provide a sufficiently complete record for appellate review. Hopping, 60 Ill. 2d at 251-52. This rule is relaxed where the incomplete record results through no fault of the defendant and the insufficiency precludes effective appellate review. See Stark, 33 Ill. 2d at 621. Defendant, therefore, must make a dual showing: that the videotape is

material to defendant's contentions on appeal and that he is not at fault for failing to preserve the videotape.

We note that, from Stark, Ramos, and Seals, defendant draws the proposition that an incomplete record on appeal requires that the defendant be granted a new trial. This argument is flawed, however, because defendant neglects the necessary steps that must be fulfilled before the relief of a new trial can be granted. As noted immediately above, the defendant must show both that the missing part of the record is necessary for effective appellate review and that the defendant is not at fault for the fact that the record is incomplete. As we discuss, defendant has fulfilled neither requirement.

Defendant essentially asserts that the loss of the videotape alone, with no other showing, renders the record incomplete for meaningful review on appeal and entitles him to a new trial. This, as we have demonstrated, is the law neither in Illinois nor even in those states that place the burden of producing the record on appeal on the State or the trial court. In all instances, the defendant must establish that the missing portion of the record is essential for appellate review. See, e.g., People v. Majka, 365 Ill. App. 3d 362, 370 (2006) (the defendant-appellant must first show a colorable need for the evidence missing from the record; upon such showing, the State-appellee must show that a substitute for the missing evidence is sufficient); see also, e.g., Simpson v. Commonwealth, 759 S.W.2d 224 (Ky. 1988) (substitute for missing record sufficient to allow appellate review); State v. Stokes, 829 So. 2d 1009 (La. 2002) (missing audiotape not material portion of record for purposes of review); State v. Mitchell, 897 S.W.2d 187 (Mo. App. 1995) (the defendant neither demonstrated nor argued that missing audiotape contained information relevant to the appellate review of his

contentions); <u>Bordman v. State</u>, 56 S.W.3d 63 (Tex. App. 2001) (neither State nor the defendant raised issue regarding missing tape; court held that tape was unnecessary for resolution of appeal).

Defendant does not argue that there is a colorable need for the videotape. Defendant fails to articulate what the videotape would show. Defendant further fails to suggest that the videotape was exculpatory or contradictory of any other evidence presented at trial. Defendant argues only that the videotape is missing. This is an insufficient demonstration of a colorable need.

Defendant attempts to avoid the necessity of demonstrating a colorable need for the missing videotape by arguing that there is no acceptable substitute for it in reviewing the issue of the sufficiency of the evidence of defendant's guilt. Regardless of the validity of that view, defendant could have established a colorable need. Had there been anything depicted on the videotape that was inconsistent with Collins' and Klingel's testimony, defendant could have amended or supplemented the agreed statement of facts.

Defendant also could have established a colorable need by pointing to argument of counsel or comments by the trial court about the videotape. See, <u>e.g.</u>, <u>People v. Appelgren</u>, No. 2--05--0018, slip op. at 10 (October 30, 2007) (colorable need for missing evidence established because of the emphasis given it in the prosecutor's closing argument). If, for example, the agreed statement of facts reported that counsel for the State and for defendant had disagreed on what conclusions should be drawn from the videotape, then there might be a colorable need for the videotape, because we would have to decide what conclusions could be properly drawn from it.

Defendant argues only that the absence of the videotape renders the record insufficient for purposes of appellate review. As we have noted, this is neither the standard nor a sufficient demonstration of colorable need. Because defendant has not made even a <u>prima facie</u> showing that

the absence of the videotape impairs our review of the record on appeal, we conclude that the record as it now stands is sufficient for review. The fact that defendant does not argue that the videotape was even in the least bit exculpatory or inconsistent with any of the police testimony presented at trial leads us to conclude that it is not material to the points he raises on appeal.

Likewise, defendant makes no argument that the incomplete record was not due to his fault in assembling the record on appeal. Without such a contention, defendant cannot satisfy the lack-of-fault element of the Hopping-Stark-Ramos-Seals line of cases. We note that the loss of the videotape was confirmed at least five weeks in advance of the due date of defendant's brief on appeal and about five months before the matter was ready to be placed before this court for decision. There was ample time for defendant to correct the agreed statement of facts to reflect any inconsistencies between the videotape and the officers' testimony. Defendant has not demonstrated, even cursorily, that the record on appeal is insufficient for our review. Accordingly, we conclude that we may review the record on appeal as it stands before us.

### 2. Sufficiency of evidence supporting DUI conviction

Defendant also explicitly argues that the evidence was insufficient to prove his guilt of DUI beyond a reasonable doubt. We disagree.

Our analysis above has demonstrated that defendant has failed to establish that the videotape is essential to the issue of sufficiency of the evidence or to any other of defendant's contentions. Accordingly, we will examine the record as it stands before us to determine whether any reasonable trier of fact could have found defendant guilty of DUI beyond a reasonable doubt. Berrier, 362 Ill. App. 3d at 1169.

The police reports attached to the agreed statement of facts indicate that defendant mumbled, stuttered, spoke incoherently, was confused as to his whereabouts, was confused as to where he was going, smelled strongly of alcohol, and staggered when he attempted to walk. In addition, defendant's eyes were glassy and bloodshot, and defendant was disheveled. Defendant also refused to take a field sobriety test. We hold that this evidence was manifestly sufficient to allow the court to find defendant guilty of the offense of DUI beyond a reasonable doubt. Accordingly, we reject defendant's explicit contention that the evidence was insufficient to support his DUI conviction.

Before concluding, we respond to the special concurrence's more germane points. The special concurrence states that defendant did not raise the sufficiency of the evidence of DUI and attaches an excerpt from defendant's brief to support its notion. The first sentence in the attachment belies the assertion: "Because the loss of a [sic] crucial prosecution evidence renders the record insufficiently complete to permit full and proper consideration [of] the claim that the defendant raised in his post-trial motion - that he was not proved guilty beyond a reasonable doubt (C33) - the defendant has been deprived of his constitutional right to a direct appeal." Integral to the parties' entire conception of the issues on appeal is the idea that the evidence was insufficient to support defendant's conviction beyond a reasonable doubt. Accordingly, we are compelled to address this issue.

Relatedly, the special concurrence strongly criticizes the majority for reaching both elements of the missing evidence inquiry, the fault inquiry and the colorable need or materiality inquiry. The special concurrence would impose a waiver on defendant for failing to discuss the fault element, and it would terminate its analysis at that point. In our view, however, both elements need to be addressed, considering the equities of this case.

The State does not argue that defendant was at fault for failing to preserve the videotape. Instead, the State argues that defendant may be at fault for failing to demand earlier that the videotape be preserved. Rather than indicating that defendant was at fault, the State's argument suggests the opposite--that defendant did not have the videotape and did not cause its loss. The circumstances reported in the affidavit concerning the loss of the videotape further indicate that the videotape was not under defendant's control at the time of its loss. Accordingly, the record appears to support the idea that defendant, as a matter of historical fact, was not at fault for failing to preserve the missing evidence. Due to this factual circumstance, and notwithstanding defendant's failure to recognize the role of fault in his analysis of the missing evidence, the ideals of justice and fairness dictate that we forgo strict application of waiver and proceed to the materiality or colorable need element of the missing evidence analysis.

The special concurrence cites a number of cases from which it purports to derive the rule that lack of fault must be decided before materiality or colorable need. Slip op. at 22. Contrary to its representation, none of the cases cited by the special concurrence state a requirement that fault be considered before materiality or colorable need. Further, we perceive no requirement that either of the two hurdles defendant faces be addressed first. It is easy to imagine a situation where fault might be a close question but lack of materiality or colorable need is readily apparent. We wonder what the special concurrence would do if an appellee demonstrated quite conclusively that certain missing evidence simply had no bearing on the issues raised in the appeal and expressly declined to address the fault issue. In short, we do not see that one of the two hurdles is "prefatory" (slip op. at 25) to the other. Either can be addressed first and sometimes it is better to address both, just as in a Strickland analysis of ineffective assistance of counsel.

The special concurrence contains a rather expansive discussion of Foutch v. O'Bryant, 99 Ill. 2d 389 (1984), concluding with: "Finally, it is a waste of time for three appellate justices to contemplate the possibility that the Foutch rule might not apply, address the merits of an appeal that was improperly perfected, insufficiently constituted, and improperly argued with improper presumptions, only to conclude the Foutch rule in fact does apply." Slip op. at 26. Actually, our only mention of Foutch is now, in response to the special concurrence, because we do not see it as at all applicable. An appellant confronted with Foutch will argue that the missing part of the record is not necessary for consideration of the appeal. Here, defendant's motivation is precisely the opposite--he is arguing prejudice because the missing videotape is necessary for consideration of the appeal. Moreover, the special concurrence's references to Foutch belie its contention that fault must be addressed before colorable need or materiality of the missing evidence. Foutch applies only if there is not "a sufficiently complete record of the proceedings at trial." Foutch, 99 Ill. 2d at 391. Thus, in order to say that Foutch applies, the special concurrence must have already determined that there is a need for the item missing from the record. While we maintain that the order in which a court considers lack of fault and materiality does not matter, the special concurrence, by erroneously relying on Foutch, actually makes a strong argument that defendant must show colorable need first, because we would not apply Foutch unless there were a need for the evidence missing from the record.

The special concurrence complains that we incorrectly analogize our analysis with that in Strickland. Slip op. at 26. However, the special concurrence effectively agrees with our analysis, recognizing that if materiality of or colorable need for the missing evidence is determined, then we can examine fault or lack of fault in its loss. Slip op. at 27. Similarly, the special concurrence challenges our reliance on Malley, because it "applies the Foutch rule." Slip op. at 29. However,

Malley states, "[a]bsent an adequate presentation of the record by the appellant, every reasonable intendment against the defendant is presumed on appeal." Malley, 103 Ill. App. 3d at 536. "Absent an adequate presentation of the record" is another way of stating that the evidence missing from the record is material to the defendant's claim, or that a colorable need for the evidence has been demonstrated. Thus, we are relying upon Malley's statement that a defendant must demonstrate materiality or colorable need.

### III. CONCLUSION

Defendant has failed to show that the evidence was insufficient to support his guilt beyond a reasonable doubt of driving while his license was suspended. Likewise, defendant has failed to make the requisite showing that he was not at fault regarding the omission of the videotape and that the videotape is material to his contentions on appeal. Defendant has also failed to demonstrate that the evidence was insufficient to support his DUI conviction. Accordingly, we affirm defendant's convictions.

For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

BYRNE, J., concurs.

JUSTICE McLAREN, specially concurring:

I concur in part and specially concur in part.

### FIRST ISSUE

"The defendant was not proved guilty beyond a reasonable doubt of driving while license suspended- [sic] because the record contains no evidence that his license was suspended on the date of the traffic stop." Defendant's Brief at 1 (points and authorities) (210 Ill. 2d R. 341(h)(1)).

I concur in the analysis of the first issue, regarding the suspended license. The law regarding the admissibility of hearsay evidence and the appropriate weight that may be given to such evidence if admitted without objection is well established.

SECOND ISSUE

"Because the loss of crucial prosecution evidence renders the record insufficiently complete to permit full and proper review, the defendant has been deprived of his constitutional right to a direct appeal of his conviction for driving under the influence of alcohol. The conviction must therefore be reversed and the cause remanded for a new trial on that charge." Defendant's Brief at 1 (points and authorities) (210 Ill. 2d R. 341(h)(1)).

Defendant's Argument

Defendant filed a three-page argument claiming that the loss of crucial prosecution evidence prevents the compilation of a record sufficient for meaningful review. This entire argument is included in an appendix to this special concurrence so that the reader can read and consider the argument. Defendant properly cites to cases for the general propositions that a defendant is entitled to a direct appeal of his conviction and that the State must provide, to an indigent defendant, a sufficient transcript for meaningful review. However, defendant cites cases that relate to missing or incomplete transcripts of proceedings. These cases do not stand for, or even consider, the right to meaningful review in the context of lost real evidence. Defendant properly cites to Stark, Hopping, Ramos, and Seals as they relate to transcripts but does not set forth the two-step test to establish the right to a reversal. See, e.g., Ramos, 295 Ill. App. 3d at 526-27 (defendant had "no control over" the circumstances that led to the compilation of an incomplete record and presented a "colorable need" for a verbatim transcript). Defendant conveniently mentions only the second step of the

analysis, relating to "colorable need." Defendant disregards the need to establish that he is not at fault for the absence of the missing evidence.

In order to raise a proper and adequate appeal, a defendant must present a record of sufficient completeness to permit proper consideration of his specific claims of error. Hopping, 60 Ill. 2d at 251-52; People v. Luke, 253 Ill. App. 3d 136, 140 (1993). The responsibility for preparation of the record is borne by the defendant; if the defendant is indigent, the financial burden of obtaining a transcript, not the administrative burden of preparing the record on appeal, is placed upon the State. See Luke, 253 Ill. App. 3d at 139. The responsibility of providing the record for the appellate court to review or establishing a colorable need for the missing portion of the record remains on the defendant. See Luke, 253 Ill. App. 3d at 140.

Without citation to authority, defendant claims that it is the State's burden to preserve the evidence or provide the defendant with a copy of the evidence. Without citation to authority, defendant further claims that "the missing video is the equivalent of a missing transcript." Again, without citation to authority, defendant claims that "[m]eaningful review requires [the videotape's] inclusion in the record because the trial judge relied upon it."

This court is not a depository wherein we must research and develop the parties' claims and arguments. People v. Trimble, 181 Ill. App. 3d 355, 356 (1989). This court is entitled to have the issues clearly defined and to be cited pertinent authority; arguments that do not satisfy the requirements of Supreme Court Rule 341 (210 Ill. 2d R. 341) do not merit consideration on appeal. Trimble, 181 Ill. App. 3d at 356-57. Defendant makes assertions but does not support them with citation to legal authority. Further, by failing to even acknowledge that lack of fault is part of the two-step analysis, defendant has failed to raise, let alone establish, his own lack of fault for failing to

include the videotape in the record on appeal. Thus, defendant has waived the claim concerning the right to a meaningful review.

Majority Discussion

The majority sets forth the two-step analysis as, "Defendant, therefore, must make a dual showing: that the videotape is material to defendant's contentions on appeal and that he is not at fault for failing to preserve the videotape." Slip op. at 12-13. The majority determines that defendant has not fulfilled either step. Unfortunately, there are several problems with the majority's formulation and application of the two-step analysis.

First, the majority has, <u>sua sponte</u>, incorrectly transposed the steps so as to place the lack of fault analysis last and the consideration of the merits first. I come to this conclusion because the majority does not follow prior law and is devoid of any rationale allowing it to alter the authority previously contained in numerous supreme and appellate court cases. See, <u>e.g.</u>, <u>Stark</u>, 33 Ill. 2d 616; <u>People v. Majka</u>, 365 Ill. App. 3d 362 (2006); <u>People v. Cunningham</u>, 309 Ill. App. 3d 824 (1999); <u>Ramos</u>, 295 Ill. App. 3d 522; <u>Luke</u>, 253 Ill. App. 3d 136; <u>Seals</u>, 14 Ill. App. 3d 413.

There is nothing in the majority opinion that would allow it to alter prior law emanating from the supreme court. The supreme court in <u>Stark</u> first considered whether a missing transcript was the fault of the defendant-appellant. It determined that the defendant was not at fault because the duty was on the State to initially provide a transcript, and the State was unable to do so because the court reporter was unable to locate her notes. <u>Stark</u>, 33 Ill. 2d at 621. The court then proceeded to determine if the missing record was necessary for meaningful review. <u>Stark</u>, 33 Ill. 2d at 621. The majority here takes a retrogressive view of judicial hierarchy, wherein the appellate court decides the order in which the two-step test is cast. Apparently, the majority does not lack the temerity to

disregard precedent of the supreme court. See <u>Somers v. Quinn</u>, 373 Ill. App. 3d 87, 99-100 (2007) (O'Malley, J., specially concurring).

I submit that the reason that fault was addressed first by the supreme court was that the general rule as set forth in <u>Foutch v. O'Bryant</u>, 99 Ill. 2d 389, 391-92 (1984), posits:

> "[A]n appellant has the burden to present a sufficiently complete record *** to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."

Without the defendant establishing a lack of fault, <u>Foutch</u> applies. If <u>Foutch</u> applies, then there are numerous presumptions that are employed in considering the merits of the appeal. If the record presented does not clearly establish that error was committed, it will be presumed that the order entered was in conformity with the law and had a sufficient factual basis, and the defendant will lose on the merits. If the defendant establishes lack of fault, then the <u>Foutch</u> rule and its negative presumptions will not be applied. Additionally, the more favorable presumptions set forth in <u>Majka</u>, 365 Ill. App. 3d 362, and <u>Mayer v. City of Chicago</u>, 404 U.S. 189, 30 L. Ed. 2d 372, 92 S. Ct. 410 (1971), will apply.

This two-step analysis is more precisely a two-<u>stage</u> analysis. In order for the court to evaluate the merits of the appeal, it must first determine whether the defendant was at fault so that the proper set of presumptions can be applied in the analysis on the merits. If a court applied the two-stage analysis in reverse, any analysis would be subject to revisitation depending upon whether the appropriate presumptions were applied in conformity with the conclusion of the lack of fault analysis.

The court could also consider the merits under both sets of presumptions and then consider lack of fault to determine which presumptions should apply and which hypothetical analysis was appropriate. That procedure, except possibly in a rare circumstance, would be judicially inefficient. If you want to put your pants on after you put your shoes on, you may, but if they don't fit over your shoes, you may have to take your shoes off and put them back on again. The majority's reformulation of the two-step analysis is similarly impractical.

Addressing lack of fault first is the most logical and practical juxtaposition. Follow, if you will, these scenarios, based upon prior case law, including Majka, 365 Ill. App. 3d 362.

First scenario: The defendant is at fault. He then has several choices as to how to proceed. He may provide instead of the missing part of the record a substitute that still does not allow meaningful review. If he chooses this alternative, he loses because he has failed to suspend the rule in Foutch. He may provide a substitute that does allow meaningful review. In such a case, we will address the merits of the claim and relax the Foutch rule, and he may win or he may lose. The State may or may not augment the substitute in order to properly respond to the claim. However, the State does not have the burden to do so.

Second scenario: The defendant is not at fault. He has now relaxed or suspended the Foutch rule. He then has several choices as to how to proceed. First, he may provide a minimal substitute that enables the appellate court to determine that there is a colorable need but does not allow for meaningful review. If the State does not augment the substitute to provide for meaningful review, the defendant wins and obtains reversal and a new trial. Second, the defendant may provide a substitute that will allow meaningful review. We would address the merits, and the defendant may win or lose. The State may or may not augment the substitute in order to properly respond to the

claim. The State has the burden to provide a sufficient substitute for meaningful review if the defendant establishes a colorable need but does not provide a sufficient record for meaningful review. Under this scenario the presumptions that are applied are the more favorable presumptions set forth in Mayer and Majka.

It is evident from the above that, depending upon fault or the lack thereof, the defendant and the State will have to approach the claim in different ways, as to both strategy and work product. In the first scenario, the defendant provides a meaningful substitute or he certainly loses. In the second scenario, he may actually win by not providing a substitute that allows meaningful review. The difference between the two results and their analyses arises out of the prefatory determination as to whether the Foutch rule is to be applied or relaxed. Additionally, the State is now burdened with making strategic choices and creating work product that are not required in the first scenario. It is not strategically logical to proceed to the colorable need step until the issue of lack of fault has been addressed and decided.

When the case is presented to us for disposition, if we do not first determine the issue of lack of fault, we will have to consider both scenarios with differing presumptions and the convoluted permutations that result by putting the cart before the horse. The juxtaposition of the two-stage test declared by the majority makes no sense.

The majority disregards the obvious simplicity of disposing of this case pursuant to the Foutch rule due to defendant's failure to establish lack of fault for filing an incomplete record. This is impractical for sundry reasons. It is an inefficient use of defendant's time, money, and effort to fail to establish lack of fault without providing a meaningful substitute. Assuming, arguendo, that the majority actually did determine that there was a colorable need, defendant would still lose because

he failed to sustain his burden on the now second stage of lack of fault. It is an inefficient use of the State's time, money, and effort to have to address the alleged merits when the second stage (lack of fault), which was raised by the State, would resolve the appeal so expeditiously. It is also unjust to place upon the State the burden to provide a meaningful substitute when defendant has failed to show that the Foutch rule should be suspended. A possible result of this false logic is that, if the State provides a meaningful substitute for the record, it will still be unclear which set of presumptions should be applied to the substitute. Finally, it is a waste of time for three appellate justices to contemplate the possibility that the Foutch rule might not apply and to address the merits of an appeal that was improperly perfected, insufficiently constituted, and improperly argued with improper presumptions, only to conclude that the Foutch rule in fact does apply.

The majority attempts to rationalize its reformulation by suggesting that there may be times when addressing fault first might be inefficient and it would be easier to address the merits. The majority attempts to ameliorate its reformulation by making an analogy to the Strickland analysis: "In short, we do not see that one of the two hurdles is 'prefatory' (slip op. at 25 ) to the other. Either can be addressed first and sometimes it is better to address both, just as in a Strickland analysis of ineffective assistance of counsel." Slip op. at 17. The analogy fails. I do not believe there is an instance where the second prong of the Strickland analysis was analyzed and then the first prong was revisited to determine if counsel was ineffective. The second-prong analysis invariably results in a finding of lack of prejudice, and deficiency is not revisited, as would be required in the majority of the scenarios involved with a determination of meaningful review. When the Strickland analysis skips the first step by presuming error, it does not apply a different set of presumptions in determining if prejudice arose. The determination of prejudice is not affected by the nature of the error. The

prejudice prong does not apply a different set of presumptions depending upon the resolution of the first step. However, in this appeal, the lack of fault will cause the relaxation of the negative presumptions in <u>Foutch</u>. The merit analysis is dependent upon the resolution of the fault issue because fault will determine the correct set of presumptions to apply.

The majority suggests that the fault step is not prefatory. If so, then which set of presumptions will be applied when the majority addresses the merits? The majority could actually "<u>Foutch</u>" the defendant were it to use the negative presumptions and determine that "colorable need" was not established. The majority might then claim that there is no need to determine fault and simply affirm, as is done with the mutually independent steps in a <u>Strickland</u> analysis. If the defendant were actually lacking fault, then he would be the victim of the improper application of the <u>Foutch</u> rule. The <u>Strickland</u> analogy would be valid only if the majority were to apply the favorable presumptions that apply under <u>Mayer</u> and <u>Majka</u> and determine that colorable need was lacking. However, if the majority found colorable need with the favorable presumptions, then it would have to consider lack of fault to determine if the favorable presumptions were validly applied. Simply put, lack of fault sets the parameters of the merits analysis. If it is established first, there is little probability that the presumptions will have to be revisited or that incorrect presumptions will be applied. Thus, utilizing the second prong first and then revisiting the first prong is both contrary to the application of <u>Strickland</u> and impractical in its own right.

The majority cites to <u>Malley</u> for the following propositions:

"The responsibility for preserving a sufficiently complete record of proceedings before the trial court rests with the defendant. [Citation]; <u>Malley</u>, 103 Ill. App. 3d at 536. Where the record on appeal is incomplete, any doubts arising from that incompleteness will be construed

against the defendant [citation] and every reasonable presumption in favor of the judgment below will be taken (Malley, 103 Ill. App. 3d at 536)." Slip op. at 7.

In Malley, the defendant failed to request that a record be made of the trial. On appeal, he presented an agreed statement of facts but claimed that it was insufficient to allege error or prejudice. Similar to the case before us, the defendant in Malley did not make "any specific allegations but merely claim[ed] he [did] not have appeal rights because he [did] not have a transcript." Malley, 103 Ill. App. 3d at 536. The court went on to point out that the defendant did not carry out his burden to preserve the record before the trial court. Thus:

"Where the record on appeal is incomplete, the court will indulge in every reasonable presumption favorable to the judgment or order appealed from. [Citation.] Absent an adequate presentation of the record by the appellant, every reasonable intendment against the defendant is presumed on appeal." Malley, 103 Ill. App. 3d at 536.

If the above quote sounds familiar, it is because it is virtually identical to the holding in Foutch quoted above. I submit that Foutch was not cited in Malley simply because it was not decided until two years after Malley. The majority states:

"Actually, our only mention of Foutch is now, in response to the special concurrence, because we do not see it as at all applicable. An appellant confronted with Foutch will argue that the missing part of the record is not necessary for consideration of the appeal. Here, defendant's motivation is precisely the opposite--he is arguing prejudice because the missing videotape is necessary for consideration of the appeal." (Emphasis added.) Slip op. at 18.

As the majority cites to Malley as authority, it would be both interesting and enlightening for it to explain why Malley applies the Foutch rule. The defendant in Malley made virtually the same

argument as is made here. The majority claims that Foutch is inapplicable in situations where the defendant makes the argument emphasized above. If the holding in Foutch is inapplicable in this case, then Malley was wrong to have applied the negative presumptions contained in cases prior to Foutch. Put another way, Foutch is applied based upon the analysis set forth in the court's disposition. It is not based upon the arguments made by the defendant. If the supreme court's holding in Foutch is inapplicable, why is the same holding, made two years earlier by the appellate court in Malley, cited as authoritative? In response to my special concurrence, the majority claims that it is relying upon Malley's statement that "a defendant must demonstrate materiality or colorable need." Slip op. at 19. The majority earlier claimed that Foutch is inapplicable because of what defendant argues rather then what defendant demonstrates. The majority fails to reconcile its rationale for the inapplicability of Foutch, based upon the arguments raised in Malley and the case before us, with what was actually demonstrated in Malley. The defendant in Malley argued prejudice because the missing record was necessary for consideration on appeal. The court applied the negative presumptions despite the defendant's argument, because he did not demonstrate lack of fault for the missing record and the Foutch presumptions doomed his attempt to establish colorable need.

In conclusion, the establishment of lack of fault is determined based upon static parameters, independent of colorable need. Colorable need is determined by alternative parameters, dependent upon whether or not lack of fault is established. The majority, by failing to confirm the establishment of lack of fault as the prefatory step, is not setting forth the law in a clear, concise manner that is conducive to a plain, speedy, and efficient review.

I submit that the majority can't see the forest for the trees. The Foutch rule is a principle of appellate procedural review. It exists in any situation that deals with the adequacy of the record

unless there is an overriding rule or principle that would require relaxation of the rule. According to Mayer and Majka, the establishment of lack of fault as a prefatory determination would relax the Foutch holding. Without first determining whether the defendant has sustained his burden of establishing lack of fault, any future review will be subject to revisitation in order to determine whether the Foutch rule should be applied to the colorable need stage. This is true regardless of the nature of the argument raised by the defendant. The defendant can and may argue anything or everything, but until he satisfies his burden of establishing lack of fault, neither he nor an analysis of colorable need will resolve whether the unfavorable presumptions of Foutch or the favorable presumptions of Mayer and Majka will apply.

There is no reported case law or statute that presumes that the loss of evidence, material or otherwise, will automatically result in reversal of a conviction without the court first determining the reason for the absence of the evidence. In fact, the Foutch rule posits the opposite conclusion. This brings us to the majority's unnecessary recitation of foreign jurisprudence. The majority declares the following:

"In Stark, Ramos, and Seals, both elements were present: the defendant's lack of fault and the materiality of the missing evidence or portion of the record to the court's review. Defendant, by contrast, suggests that a per se rule should obtain: If evidence presented at trial is missing from the record on appeal, then the record is not sufficiently complete for appellate review. Our analysis of the law in Illinois belies this per se rule. We therefore turn to other jurisdiction to attempt to discern the roots of defendant's per se rule." Slip op. at 10-11.

First, I disagree that a fair reading of defendant's brief would reveal that defendant suggests a "per se" rule should obtain. Defendant argues, "In some cases, a bystander's report or an agreed statement of facts may suffice ***. [Citations.] However, that will not always be the case." (The reader may read the attached argument from defendant's brief in order to personally consider the "suggestion" of the rule.) I submit that this argument is not claiming that, as a matter of law, meaningful review cannot be obtained. Mayer, the claimed source of the right to meaningful review and cited by defendant, did not hold that the record needed to be verbatim or in its original condition. See Mayer, 404 U.S. at 194, 30 L. Ed. 2d at 378, 92 S. Ct. at 414, quoting Griffin, 351 U.S. at 20, 100 L. Ed. at 899, 76 S. Ct. at 591 ("A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript. *** [A] State 'may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review ***' "). All cited Illinois case law comports with this statement. Majka, decided in 2006, repudiates the allegedly suggested "per se" rule. Majka cites to Supreme Court Rule 323(c), which allows the substitution of a bystander's report when "no verbatim transcript of the evidence of proceedings is obtainable." 210 Ill. 2d R. 323(c); Majka, 365 Ill. App. 3d at 368. Supreme Court Rule 323(d) also allows the parties to stipulate to an agreed statement of facts in lieu of a report of proceedings. See 210 Ill. 2d R. 323(d). Majka also cites to Hopping to refute the alleged per se rule:

"Our supreme court has held that the constitution does not require some particular degree of detail for a substitute to be permissible. Instead, it requires 'a record of sufficient completeness to permit proper consideration of the specific claims made by the defendant.' " Majka, 365 Ill. App. 3d at 370, quoting Hopping, 60 Ill. 2d at 251-52.

The difference between Majka and this case is that, in Majka, the defendant explicitly raised two issues on appeal that were affected by the lack of a verbatim transcript--the allegedly incredible testimony of a witness and improper comments made by the prosecutor during voir dire, concerning the burden of reasonable doubt. These issues were not raised in a vacuum or raised as a nebulous integral part "of the parties' conception of" the issue of meaningful review, as claimed by the majority herein. See slip op. at 17. Also in Majka, lack of fault was established, the Foutch rule was suspended, and the presumptions in Mayer were used to consider the merits. In this case, the claim of meaningful review is vacuous. Defendant raises the issue of meaningful review but does not raise any specific issue the review of which would be affected by the lack of a complete record. In support of his claim of lack of meaningful review, defendant references only a piece of evidence missing from the record. Defendant neither raises nor attempts to cite an independent issue that would direct our attention, even if Foutch did not apply, to some portion of the record and some argument that might establish error. Favorable presumptions have little value when there is nothing to relate them to.

Defendant is guilty of circuitous logic resulting in "bootstrapping."[1] He has claimed that he is entitled to a reversal. Why? Because the missing evidence was crucial. Why? Because the trial court viewed it. Why? Because it was crucial. If that is how a colorable need is established, then every time a piece of evidence is missing, there will be, ipso facto, a colorable need established. That

---

[1]Bootstrapping alludes to a German legend about a Baron Münchhausen, who was able to lift himself out of a swamp by pulling himself up by his own hair. In later versions, he was using his own boot straps to pull himself out of the sea, which gave rise to the term. R. Raspe, The Surprising Adventures of Baron Münchhausen (or Baron Münchhausen's Narrative of his Marvellous Travels) (1785.

has not been the law, under either <u>Foutch</u> or its exceptions as stated in <u>Mayer</u> and <u>Majka</u>. The majority is mistaken to conclude that this circuitous argument can be properly addressed by foreign jurisprudence.

Assuming, <u>arguendo</u>, that defendant suggested such a rule, the law in Illinois is clear, and there is no benefit to be obtained from considering foreign jurisprudence. There are six Illinois cases on point: <u>Stark</u>, <u>Luke</u>, <u>Ramos</u>, <u>Seals</u>, <u>Majka</u>, and <u>People v. Cunningham</u>, 309 Ill. App. 3d 824, 830 (1999). The majority does not cite to authority for the proposition that we must or should address "suggestions," especially those that the court raises <u>sua sponte</u>. As framed by defendant's brief and his bootstrapping, this is not a case of first impression, and thus reference to foreign jurisprudence has little bearing upon the resolution of this alleged "suggestion." See, e.g., <u>Tri-G, Inc. v. Burke, Bosselman & Weaver</u>, 222 Ill. 2d 218, 267 (2006) (a case involving a question of first impression, where the court examined foreign jurisprudence for enlightenment and direction and adopted the approach taken by California and New York).

Assuming further that defendant attempted to argue something other than the required two-stage analysis, it was neither a rule nor <u>per se</u>. Defendant argued that the videotape "is a one-of-a-kind recording that cannot be recreated with a bystander's report or agreed statement of facts." Defendant's argument is not a <u>per se</u> rule but a <u>sui generis</u> argument. Coincidentally, this argument was refuted in <u>Majka</u>:

"Our supreme court has held that the constitution does not require some particular degree of detail for a substitute to be permissible. Instead, it requires 'a record of sufficient completeness to permit proper consideration of the specific claims made by the defendant.' [Citation.]" <u>Majka</u>, 365 Ill. App. 3d at 370.

Defendant incorrectly raised the issue of meaningful review and the majority turns it into a "suggested per se rule"/straw man in order to recite foreign jurisprudence. The majority, rather than defendant, is making the suggestion. The majority, rather than defendant, relates to foreign jurisprudence to conflate this unnecessary revelation. The majority early on establishes what the law in Illinois is. See slip op. at 10-11. There is no need to go further. Ironically, the majority concludes its research of foreign jurisprudence with the following statement: "From our examination of cases in Illinois, as well as those in other jurisdictions that follow similar principles, we conclude that the rule described in Hopping provides the general statement of the law in Illinois ***." Slip op. at 12. Illinois cases are controlling (see People v. Human, 331 Ill. App. 3d 809, 820 (2002)); foreign jurisprudence is not. See Giannini v. First National Bank of Des Plaines, 136 Ill. App. 3d 971, 980 (1985). To the extent that the majority's statement equates the legal effect of foreign jurisprudence with that of Illinois case law, I disagree. I believe that the exposition on foreign jurisprudence is irrelevant, immaterial, and incompetent. There is nothing of legal significance to be gained by including the exposition in this disposition.

Finally, the majority inaccurately defines what the correct second stage is or should be. The majority first posits the stage as showing "that the videotape is material to defendant's contentions on appeal." Slip op. at 12-13. In the conclusion, the majority reiterates the stage as establishing "that the videotape is material to his contentions on appeal." Slip op. at 19.

I submit that the proper phrase to define the second stage should include the term of art that is set forth in 10 other Illinois cases. The term of art is "colorable need." See Appelgren, No. 2--05--0018, slip op. at 8 (October 30, 2007); Majka, 365 Ill. App. 3d at 370; Cunningham, 309 Ill. App. 3d at 830; Ramos, 295 Ill. App. 3d at 526; Luke, 293 Ill. App. 3d at 139; In re Dawn H., 281 Ill.

App.3d 746, 753 (1996); Malley, 103 Ill. App. 3d at 536; People v. Armstrong, 43 Ill. App. 3d 586, 597 (1976); People v. Robinson, 25 Ill. App. 3d 52, 59 (1975); Seals, 14 Ill. App. 3d at 414.

Considering the abundant use of "colorable need" to define this stage, the majority should not cease its use through the creation of an alternative phrase. (Ironically, the majority itself mentions "colorable need" at least nine times as a term of art relating to the second stage (slip op. at 14 (four times), 15 (five times)). The correct second stage should be, "the defendant must establish a colorable need for the item missing from the record based upon the issue(s) raised on appeal." This phrase means issue(s) other than the sole issue raised herein, i.e., that meaningful review is impossible simply because there is something missing. There must be a context, or the defendant will merely be bootstrapping, as was done here.

Finally, I disagree with the non sequiturs contained in the majority opinion. The first non sequitur states as follows:

"Because defendant has not made even a prima facie showing that the absence of the videotape impairs our review of the record on appeal, we conclude that the record as it now stands is sufficient for review." Slip op. at 14-15.

The failure to prove one side of a proposition does not prove the opposite. An example of this axiom is the Scottish Verdict. The Scottish Verdict has three possible dispositions: guilty, not guilty, and not proven. The "not proven" verdict is rendered when the evidence presented does not establish guilt but fails to establish innocence. Another example is that the failure to prove that God exists does not prove that God does not exist. The failure to prove that the record is insufficient does not prove that it is sufficient. It merely establishes that the defendant has not sustained his burden on review.

The majority serves up its second non sequitur immediately thereafter:

"The fact that defendant does not argue that the videotape was even in the least bit exculpatory or inconsistent with any of the police testimony presented at trial leads us to conclude that it is not material to the points he raises on appeal." Slip op. at 15.

There is more than one probable reason why the argument was not made. One probable reason is that it does in fact lack merit. Another probable reason is that counsel was ineffective for failing to properly raise and argue the point, as evidenced by the three-page argument attached. The majority's conclusion is pure speculation, and I distance myself from it. More to the point, it is a conclusion based upon a negative presumption connected to the Foutch rule. It would appear that the majority is applying a Foutch rule presumption before it determines if the Foutch rule applies.

The third non sequitur states:

"Defendant has not demonstrated, even cursorily, that the record on appeal is insufficient for our review. Accordingly, we conclude that we may review the record on appeal as it stands before us." Slip op. at 15.

This is a repetition of the first non sequitur. It establishes the proof of a proposition based upon the lack of proof of the opposite. Additionally, it makes no sense to review the record when defendant raises no issue relating to the need to review what is contained in the record. The second issue raised by defendant raises an argument about what is not in the record, not what is. Any discussion regarding review of the record with regard to the second issue is unnecessary.

THIRD ISSUE

"                                        ." Defendant's Brief at 2 (points and authorities) (210 Ill. 2d R. 341(h)(1)).

The majority claims that " [d]efendant also argues that the evidence was insufficient to prove his guilt of DUI beyond a reasonable doubt." Slip op. at 8. The majority is more emphatic on page 15 wherein it relates, "Defendant also explicitly argues that the evidence was insufficient to prove his guilt of DUI beyond a reasonable doubt." Slip op. at 15.

I disagree. There is no issue set forth in defendant's brief that remotely raises reasonable doubt as to DUI. There were only two issues raised in the brief and they are set forth verbatim above. Additionally, there are no points and authorities set forth in the brief that remotely raise, expound upon, cite authority regarding, or argue that the evidence was insufficient to prove guilt. There is nothing to support the existence of the explicit argument addressed by the majority as the third issue. Supreme Court Rule 341(h)(3) requires a statement of the issue(s) for review. 210 Ill. 2d R. 341(h)(3). Supreme Court Rule 341(h)(1) requires a "summary statement, entitled 'Points and Authorities,' of the points argued and the authorities cited in the Argument." 210 Ill. 2d R. 341(h)(1). Supreme Court Rule 341(h)(7) states in part, "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(h)(7).

Defendant's entire DUI argument is attached so that the reader may attempt to locate wherein defendant allegedly raised the issue of guilt beyond a reasonable doubt, in conformity with rules of appellate procedure or otherwise. It is also included so that the reader may search for the element or elements of the crime that were allegedly not proven, as well as the references to the record where the evidence was insufficient, incredible, inconsistent, impeached, incompetent, or exculpatory. The reader may also attempt to locate the citations to authority regarding all of the above.

The majority responds to my concern by relating that "[i]ntegral to the parties' entire conception of the issues on appeal is the idea that the evidence was insufficient to support defendant's

conviction beyond a reasonable doubt. Accordingly, we are compelled to address this issue." Slip op. at 16. I submit that we are compelled by supreme court rule to <u>refuse</u> to address an issue not raised by defendant. The definition of "integral" is "essential to completeness." Webster's Third New International Dictionary 1173 (1993). The mention of guilt in defendant's brief is related only to the issue of whether there is a colorable need to make further inquiry. The mention of reasonable doubt in the postjudgment motion does not qualify as an explicit statement regarding whether defendant was not guilty. Mentioning guilt without setting it forth in the statement of issues or points and authorities and without developing any argument concerning lack of guilt does not qualify as explicitly raising an issue for appellate review. Defendant does not seek a review of the determination of his guilt. If he did, then what element or elements are unproven, and where in (or out of) the record is the evidence of innocence? The issue of guilt was not properly raised as the basis for establishing a "colorable need," nor was it presented as a separate issue that we are compelled to address. If the issue were properly raised, it might have cured defendant's circuitous arguments. However, it was not raised. If defendant has raised the issue of guilt, he has done nothing more than dump this "integral part" of the issues on us in violation of established case law and rules of appellate procedure. Assuming, <u>arguendo</u>, that the issue is an "integral part" of the colorable-need test, it is waived, and we are compelled <u>not</u> to address it:

> "Defendant does not identify the element of the offense that he claims was not sufficiently proven, nor does he in any manner explain how the evidence was insufficient to prove him guilty of this offense beyond a reasonable doubt. We deem this contention waived, as it is devoid of argument or citation to legal authority in contravention of the requirements of Supreme Court Rule [341(h)(7) (210 Ill. 2d R. 341(h)(7))]. *** The appellate court is not

a depository into which a party may dump the burden of research. [Citation.] It is well settled that we are entitled to a well-reasoned argument, along with authority for such argument. [Citation.]" People v. John J. O'Malley, 356 Ill. App. 3d 1038, 1046 (2005) (with J.M. O'Malley, P.J., concurring).

Finally, the majority makes the following representation:

"The circumstances reported in the affidavit concerning the loss of the videotape further indicate that the videotape was not under defendant's control at the time of its loss. Accordingly, the record appears to support the idea that defendant, as a matter of historical fact, was not at fault for failing to preserve the missing evidence. Due to this factual circumstance, and notwithstanding defendant's failure to recognize the role of fault in his analysis of the missing evidence, the ideals of justice and fairness dictate that we forgo strict application of waiver and proceed to the materiality or colorable need element of the missing evidence analysis." Slip op. at 17.

I disagree.

The affidavit referenced above states the following:

"[A] video tape of the traffic stop and subsequent arrest of the defendant, which was considered by the trial judge in this captioned case, is not in the possession of the Office of the Kendall County Circuit Clerk, Kendall County State's Attorney's Office or Kendall County Public Defender's Office. A search by all parties involved to locate the video tape has been unsuccessful."

The affidavit establishes only two things: first, that the tape is not in the record; and, second, that a search by all parties was unsuccessful. There is nothing in the affidavit to support the conclusion that

the tape was lost while "not under defendant's control." The conclusions drawn by the majority are non sequiturs. The affidavit does not establish lack of fault as to any affiant. "[A]bsence of evidence [of fault] is not evidence of absence [of fault]." People v. Mata, 353 Ill. App. 3d 784, 788 (2004) (McLaren, J., specially concurring). The burden is not on the State to establish its lack of fault or to establish fault on the part of the defendant. It is the burden of the defendant to establish lack of fault on his part. This affidavit neither states nor implies that defendant is lacking in fault. The majority has submitted these non sequiturs in order to rationalize its compulsion to address the merits of this unstated, unargued, and undeveloped issue.

CONCLUSION

As noted by Timothy P. Terrell, professor of law at Emory University and lecturer on legal writing, most practitioners/readers read opinions because they have to, not because they want to. If you conclude that this opinion was unnecessary, or not worth the time it took to peruse it, I apologize. I believe you have been forced to read what should have been an unpublished summary order based upon the briefs filed and the issues raised therein, or I should say, not raised therein.

**APPENDIX**

**BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

**II.**

**Because the loss of crucial prosecution evidence renders the record insufficiently complete to permit full and proper review, the defendant has been deprived of his constitutional right to a direct appeal of his conviction for driving under the influence of alcohol. The conviction must therefore be reversed and the cause remanded for a new trial on that charge.**

Because the loss of a crucial prosecution evidence renders the record insufficiently complete to permit full and proper consideration the claim that the defendant raised in his post-trial motion - that he was not proved guilty beyond a reasonable doubt (C33) - the defendant has been deprived of his constitutional right to a direct appeal. His conviction for driving under the influence of alcohol must therefore be reversed and the cause remanded for a new trial.

In finding the defendant guilty of driving under the influence of alcohol, the trial judge referred to testimony and a video of the incident. (C26) The video cannot be found, according to an affidavit by the Kendall County Circuit Court Clerk. [Appendix at A16]

The issue of whether the Defendant has been denied his right to appeal as a result of an incomplete record presents only a question of law, and is therefore subject to *de novo* review. *See* People v. Coleman, 183 Ill.2d 366, 387 (1998).

The Illinois Constitution guarantees defendants convicted of criminal offenses a right to direct appeal. Ill. Const., Art. VI § 6. An indigent defendant who pursues a direct appeal is entitled to a free transcript of the trial court proceedings. Supreme Court Rule 607(b). *See also*

Griffin v. Illinois, 351 U.S. 12, 17-19 (1956). Moreover, "[t]he State must furnish a record of sufficient completeness to permit proper consideration of [the defendant's] claims." People v. Luke, 323 Ill.App.3d 136,139 (1st Dist. 1993)(*citing* Draper v. Washington, 372 U.S. 487, 499 (1963)). *Accord*, Mayer v. City of Chicago, 404 U.S. 189, 194 (1971); People v. Hopping, 60 Ill.2d 246, 251-252 (1975); People v. Johnson, 327 Ill.App.3d 252, 258 (4th Dist. 2002); People v. Malley, 103 Ill.App.3d 534, 536 (3rd Dist. 1982).

In some cases, a bystander's report or agreed statement of facts may suffice in the absence of a verbatim transcript of the trial court proceedings. Supreme Court Rule 323(c),(d); Mayer, 404 U.S. at 194; Hopping,60 Ill.2d at 253; People v.Ramos, 295 Ill.App3d 522, 525-526 (1st Dist. 1998); Luke, 323 Ill.App.3d at 139. However, that will not always be the case. "[W]here the grounds on appeal... make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript, or an 'alternative' will suffice for an effective appeal on those grounds." Mayer, 404 U.S. at 194. *Accord* Ramos, 295 Ill.App.3d at 526; People v.Seals,14 Ill.App.3d 413, 414 (1st Dist. 1973); Luke, 323 Ill.App.3d at 139; Malley, 103 Ill.App.3d at 536.

Here, an Agreed Statement of Facts relates the substance of the trial testimony, but the video, which the judge referred to in his finding of guilt (C26), is missing, despite efforts to locate it. Your Honors granted appellate counsel's motion to compel production of the video or to account for its absence. [Appendix, at A15] Pursuant to this Court's order, the Kendall Circuit

clerk filed an affidavit with this Court, dated September 27, 2006, stating that the video could not be found [Appendix, at 16]

The loss of the video necessitates that this cause be reversed and remanded for a new trial. *Compare* Ramos, 295 Ill.App.3d at 526 (*reversed and remanded for new trial because post-trial claim of insufficiency of evidence presented colorable need for a verbatim transcript in order to afford defendant constitutional right to direct appeal*); Seals, 14 Ill.App.3d at 414 (*reversed and remanded for new trial because record reveals colorable need for a verbatim transcript to afford the defendant effective appellate review of his claims*). *See also* People v. Stark, 33 Ill.2d 616 (1966) (*remanded for new hearing on defendant's motion to suppress confession where defendant raised suppression issue on appeal but the transcript was unavailable through no fault of defendant*). The missing video is the equivalent of a missing transcript. Meaningful review requires its inclusion in the record because the trial judge relied on it. (C26)

There is no acceptable substitute for the video of the incident. It is a one-of-a-kind recording that cannot be recreated with a bystander's report of agreed statement of facts. The defendant's post-trial motion claimed that the evidence was insufficient to prove him guilty beyond a reasonable doubt. (C33) Without the video, this Court lacks sufficient basis to review his claim. The loss of the video deprives the defendant of his right to full and proper direct appellate review. Accordingly, the defendant requests that this Honorable Court reverse his conviction, vacate his sentence, and remand this cause for a new trial.